Stevens, J.
Atkin’s Waste Materials, Inc. has conducted scrap processing operations at the same premises in the City of Rochester since 1942. In 1964, it obtained a lease which contained a condition that plaintiff obtain a variance to conduct its scrap processing operation. Plaintiff did obtain such a variance for the duration of the lease which, by its terms, incorporated by reference the provisions of the 1964 lease. Prior to the execution of the 1967 lease, which was a renewal of the 1964 lease, plaintiff’s attorney received a letter from the City Manager of the City of Rochester, dated March 16, 1967, which advised the plaintiff that “ if the torch burning is done in accordance with present or future City Code provisions,” minor and intermittent torch burning in gondola cars, such as was then taking place, might continue. Plaintiff was informed, however, “if * * * such * * * burning violates the Code or produces a nuisance,” the city would give notice of the violation and plaintiff would be compelled to cease such burning until it could comply with the code’s restrictions.
Paragraph 14 of the lease provided that if a default occurred in the performance of any of its terms, due notice would be given plaintiff and a reasonable time afforded to correct the default. Paragraph 16 bound the plaintiff to accept delivery of automobile hulks and all kinds of metallic and/or ferrous scrap materials from the City of Rochester without charge. Under paragraph 24 plaintiff had an option to renew the lease *426 for an additional five-year period which would expire at midnight, November 30, 1976.
On July 20, 1967, in the only notice of its kind, plaintiff was notified by letter that there were large open burnings which seemed to be a violation. At least some of that burning, according to plaintiff, was made necessary as a result of the condition of the scrap materials delivered to the plaintiff by the city. An order of the Department of Health, dated October 3, 1967, directed plaintiff to cease the open burning of the refuse.
An inspection report by the Department of Buildings and Property Conservation, dated November 24, 1970, and mailed to plaintiff in a covering letter, dated December 29, 1970, found plaintiff’s operation in “ substantial compliance ”. On December 30, 1970, plaintiff, by letter, elected to exercise its option to renew the lease. Plaintiff’s junkyard operator’s license was renewed August 10, 1971, to expire November 30, 1971, and a fire department inspection during the week of June 14, 1971, found the yard in “ good condition ”.
The notice of renewal was rejected by the city by the passage of an ordinance, No. 71-212, on April 27, 1971. Defendant, by letter of April 30, 1971, notified plaintiff that its election to exercise the option was rejected because of “ failure to fully and faithfully perform each and every term, covenant and condition of the lease as is required in order for you to be entitled to a renewal.” This letter did not particularize in what respect there was noncompliance and it could hardly be considered adequate notice so as to permit the plaintiff to correct the conditions complained of. If plaintiff were found in default, then, under paragraph 14 of the lease, he was entitled to reasonable notice of the conditions and a reasonable opportunity to cure the default. On November 5, 1971, plaintiff received the notice and order that the temporary variance granted January 16,1964 had expired, and any operations based on the 1964 variance would be illegal and must be terminated.
The trial court found that plaintiff timely exercised its option to renew. The exercise of an option by a tenant to extend a lease accomplishes not a new lease, but simply a prolongation of the original agreement, so that, in effect, the original lease became one for the entire term. (Matter of Harvey Holding Corp. [Satter], 297 N. Y. 113, 118; Gulf Oil Corp. v. Buram *427 Realty Co., 11 N Y 2d 223, 226.) This would include the variance as one of the provisions.
Defendant continued to accept the rent which Avas paid monthly through November, 1971 Avith knowledge of the defaults, if such there were. When rent is accepted with knowledge of particular conduct which is claimed to be a default, the acceptance of such rent constitutes a waiver by the landlord of the default. (Woollard v. Schaffer Stores Co., 272 N. Y. 304, 312; Murray v. Harway, 56 N. Y. 337.) The acceptance of the rent is in effect an election by the landlord to continue the relationship of landlord and tenant. In its role as landlord here, the defendant city is acting in a proprietary and not in a governmental capacity. The lease is to be given a reasonable construction in light of that which the parties intended and that Avhich was sought to be achieved by the parties. (See Farrell Lines v. City of New York, 30 N Y 2d 76, 82.)
Where the city, with knowledge that the condition of the scrap delivered to plaintiff by it accounted in some measure for the burning of which it complains, continued to deliver and to require plaintiff to accept such delivery in accordance with the terms of the lease, it may fairly be concluded that substantial compliance Avith the lease terms is what is required. The obligation to cure defaults upon reasonable notice given, remains an obligation of the tenancy.
Accordingly, the order appealed from should be reversed upon the judgment for plaintiff at Trial Term and such judgment reinstated Avith costs to appellant.