■ MICHAEL S. GRUEN, Appellant, v CHARLES PATTERSON et al., Respondents, et al., Defendants. — Order, Supreme Court, New York County, entered July 9, 1980, denying plaintiff's motion for summary judgment and granting the cross motion of defendants Patterson to dismiss the complaint, is affirmed, without costs. Unsuccessful in prior dispossess proceedings, with one such proceeding currently pending in Civil Court, plaintiff landlord has brought this action seeking a judgment declaring that the tenants are not entitled to automatic renewal of their leases because of chronic lateness in the payment of rent. Plaintiff recites a litany of alleged abuses by these tenants in the payment of their rent. Although payment is due on the first of each month, the average date for payment in full over the first 19 months of occupancy (through Feb., 1980) has been the 16th of the month. Only twice since January, 1979 has full payment of monthly rent been received before the 13th, and only three times before the 15th. During this period four monthly rent checks were dishonored upon deposit. Plaintiff states that the Pattersons have threatened to withhold rent until the very threshold of eviction, on one occasion carrying through on their threat and actually suffering a default judgment for overdue rent, then making payment only after obtaining a stay of a warrant of eviction. Tenants assert that two months' rent (May and June, 1979) were withheld because of recorded hazardous violations which landlord agreed to cure during the summary proceedings. The rent was then paid upon the basis of landlord's promise to repair. Part V of the Code of the Real Estate Industry Stabilization Association of New York City, Inc., sets forth a landlord's grounds for eviction and refusal to renew a lease. Section 50 of the code provides in pertinent part as follows: "No tenant, so long as he continues to pay the rent to which the owner is entitled shall be denied a renewal lease as prescribed by this Code, nor shall he be removed from any dwelling unit by action to evict or to recover possession, * * * except on one or more of the grounds specified in this Code". Five instances where the owner need not offer a renewal lease are enumerated in section 54 of the code: (a) occupancy by a proprietary lessee, (b) occupancy sought by the owner or his immediate family, (c) tenant's refusal to renew, (d) withdrawal of the premises from the rental market, (e) occupancy not as a primary residence. The introduction to section 54 expressly provides that an owner is relieved of the requirement to offer a renewal lease *"only* upon one of [these five] grounds" (emphasis supplied). These grounds do not include late payment of rent, chronic or otherwise. This is consistent with the general proposition that payment of rent is not a condition precedent to the right of a tenant to a renewal of his lease. (Rasch, NY Landlord & Tenant-Summary Proceedings [2d ed], § 328.) Our dissenting brethren have concluded that section 54 of the code should be broadened to cover instances where a tenant is habitually late in payment of rent. They find it incomprehensible that a tenant

with such a history of late payment should be entitled to a renewal lease. But the governing authority (§ 50) speaks not in terms of the manner or timeliness of payment of rent; rather, it is confined to the question of whether rent has been paid at all. It requires the offer of a renewal lease to a tenant "so long as he continues to pay the rent". While we do not condone the pattern of these tenants in paying their rent, there can be no dispute that the rent has been paid. We thus find no authority for any attempt to expand judicially the expressly limited provisions of section 54 of the code. We recognize the paramount obligation of a tenant to pay his rent in a timely fashion. However, the Real Estate Industry Stabilization Association which adopted the code did not include lateness in paying rent in that code as a ground for denying renewal of a lease. If that private industry association did not see fit to include chronic late payment of rent as a ground for nonrenewal and for eviction, the courts should not do so by a species of interpretation. Landlord's remedy is to pursue his dispossess proceedings which, if successful, would render academic Special Term's denial of a declaration that landlord has no obligation to offer renewal of the lease. To rule otherwise would be an invitation for landlords to seek a declaratory judgment on the question of lease renewal each and every time a tenant establishes any kind of a pattern of late payment of rent. We are informed that upon reargument Special Term has withdrawn so much of its decision as indicates article 78 relief might be available after administrative proceedings pursuant to a July 1, 1979 amendment of subdivision 3 of section 54 of the regulations. The regulations referred to are the Tenant Protection Regulations adopted by the State Division of Housing and Community Renewal pursuant to subdivision a of section 10 of the Emergency Tenant Protection Act of 1974 (L 1974, ch 576, § 4), which are applicable only in cities having a population of less than 1,000,000. The Rent Stabilization Code is applicable in New York City (Emergency Tenant Protection Act of 1974, § 10, subd b). Concur — Fein, Ross and Bloom, JJ.

Kupferman, J. P., and Birns, J., dissent in a memorandum by Kupferman, J. P., as follows: The landlord seeks a declaratory judgment to the effect that a tenant who is chronically late in paying rent on premises subject to the Rent Stabilization Law and Regulations as amended by the Emergency Tenant Protection Act of 1974, need not be offered a renewal lease. There are five specific grounds where the owner is not required to offer such a renewal lease, as enumerated in the majority opinion. (Rent Stabilization Code, § 54.)* Section 50 of the Rent Stabilization Code provides that "No tenant, *so long as he continues to pay the rent to which the owner is entitled,* shall be denied a renewal lease as prescribed by this Code" (emphasis supplied). The court at Special Term, while finding that there was a pattern of late payments, held that such record could not be considered within the purview of section 50. The purpose of the Rent Stabilization Law and the Tenant Protection Act was: "to prevent exactions of unjust, unreasonable and oppressive rents and rental agreements and to forestall profiteering, speculation and other disruptive practices tending to produce threats to the public health, safety and general welfare; that the transition from regulation to a normal market of free bargaining between landlord and tenant, while still the objective of state and city policy, must be administered with due regard for such emergency" (Administrative Code of City of New York, § YY51-1.0 [Rent Stabilization

---

* The Code of the Real Estate Industry Stabilization Association of New York City, Inc., was adopted by the New York City Rent Stabilization Association pursuant to section YY51-6.0 of the New York City Administrative Code. (Cf. Tenant Protection Regulations under the Emergency Tenant Protection Act of 1974, § 51.)

Law]). Obviously, the purpose was to shield a tenant against unjust exactions and not to permit the tenant to subject the landlord to a deprivation of his normal right to payment within a reasonable time. The provision in section 50 requiring rent to which the owner is entitled, to be paid cannot be interpreted to mean that the tenant can be habitually late. (Cf. *Park West Mgt. Corp. v Mitchell,* 47 NY2d 316, 323, cert den 444 US 992.) We would declare that the provision for payment of rent in section 50 means payment in the normal course, and that the history of late payments by the tenant (other than that due to violations) entitles the landlord to refuse to offer a renewal lease.