# (March 27, 1984)

■ MONARCH INFORMATION SERVICES, INC., et al., Appellants, v 161 WILLIAM ASSOCIATES, Respondent. — Order of the Supreme Court, New York County (Richard W. Wallach, J.), entered on September 2, 1983, which denied plaintiffs' motion for a preliminary injunction and granted defendant's cross motion to dismiss the complaint, is reversed, on the law, the facts and in the exercise of discretion, with costs, the defendant's cross motion to dismiss the complaint is denied and the plaintiffs' motion for a preliminary injunction is granted. ¶ It is undisputed that the principals of APSI Monarch, Ltd., and Monarch Data Corporation are and have always been identical and that the employees of the two corporations are the same and that the two corporations have occupied the premises from the beginning of the relationship between them and the defendant 161 William Associates. It is equally undisputed that while the lease is in the name of APSI Monarch, Ltd., and Monarch Data Corporation is the guarantor under the said lease, the defendant has continuously since May of

1982, and for some 15 consecutive months, accepted payment of the rent for the premises from Monarch Data Corporation. ¶ Indeed, it appears that even after the notice to cure the default was served upon the appellant APSI Monarch, Ltd., rental payments were accepted from Monarch Data. Special Term and our dissenting brother assert the right of the defendant to accept rent from "guarantor" and/or sublessee/assignee under the nonwaiver provisions of paragraph 11 of the lease. That lease provision however, entitles the landlord to "collect rent from the assignee, under-tenant or occupant, and apply the net amount collected to the rent herein reserved" only after there has been a *default* by the tenant. The meaning of the language "after default by Tenant", inserted parenthetically in the "nonwaiver" clause, is unclear. If the "default" referred to is the subletting or assignment, then the phrase is surplusage, since the sentence opens with the conditional language describing that circumstance. If the referenced "default" pertains to the failure of the tenant to pay the rent following the assignment or subletting, then the defendant's acceptance of the rent here was unauthorized by paragraph 11. There is no contention that there was a default by APSI Monarch at any time of the payment of the rent due. ¶ As has been stated by the Court of Appeals in *Atkin's Waste Materials v May* (34 NY2d 422, 427), "[w]hen rent is accepted with knowledge of particular conduct which is claimed to be a default * * * acceptance of the rent is in effect an election by the landlord to continue the relationship of landlord and tenant." In *Jefpaul Garage Corp. v Presbyterian Hosp.* (92 AD2d 514 [a case in which there was indeed a general nonwaiver clause and the issue of nonwaiver was presented to this court in the briefs on appeal]), we held the determination of the Court of Appeals in *Atkin's* (*supra*) to be dispositive of issues such as those here presented. Paragraph 11 of the lease bars both assignment and subletting. It is undisputed that Monarch Data Corp. occupied the premises along with APSI Monarch from the inception of the lease. Thus, the acceptance of the rent from Monarch Data Corp. during the course of this "subletting" effectively waived the lease prohibition as well. ¶ At the very least, it appears that questions of fact exist in respect to the intention of the parties that can be resolved only by an examination of their conduct over the course of the relationship between them and by a determination of what the defendant knew and when was it known. Accordingly, since the equities seem to favor the tenant, the *status quo* ought to be maintained, pending such determination. Concur — Ross, Fein and Alexander, JJ.

Murphy, P. J., and Silverman, J., dissent in a memorandum by Murphy, P. J., as follows: In this action, a declaration is sought that, on January 1, 1983, plaintiff APSI Monarch, Ltd. (APSI), validly assigned the instant lease to Monarch Data Corp. (Data). On February 15, 1983, Data changed its name to Monarch Information Services, Inc. (Monarch), the other named plaintiff. Plaintiffs assert that, on June 15, 1983, they asked the defendant landlord, 161 William Associates (Associates), to consent in writing to the assignment. Plaintiffs emphasize that, even though Associates refused to consent, it subsequently accepted rental payments for the months of June and July, 1983. It is plaintiffs' contention that Associates thereby waived its right to challenge the assignment. ¶ Associates, on the other hand, stresses that, under paragraph 11 of the lease, APSI agreed not to assign the lease without the written consent of the landlord. That paragraph also contained a "nonwaiver" clause. It permitted Associates to collect rent from an unapproved assignee, such as Monarch, without waiving the covenant that required the written consent to an assignment. ¶ Because of the "nonwaiver" clause, Associates was contractually permitted to collect rent for June and July, 1983, but later to declare a default for the continuing breach (*Pollack v Green Constr. Corp.,* 40 AD2d 996, affd 32 NY2d 720; *Brainerd Mfg. Co. v Dewey Garden Lanes,* 78 AD2d 365, app

dsmd 53 NY2d 701; *Berkeley Assoc. Co. v Revere Garage Corp.,* NYLJ, Aug. 6, 1980, p 11, col 1 [App Term, 1st Dept]; *Luna Park Housing Corp. v Besser,* 38 AD2d 713). The cases cited by plaintiffs on the principle of waiver are distinguishable and are not controlling since the operative facts in those cases did not include "nonwaiver" clauses. (*Atkin's Waste Materials v May,* 34 NY2d 422; *Jefpaul Garage Corp. v Presbyterian Hosp.,* 92 AD2d 514; *Malloy v Club Marakesh,* 71 AD2d 614.) ¶ Plaintiffs' other arguments on the waiver issue are also without merit. Plaintiffs assert that Monarch was physically present in the premises from the commencement of the lease. They note that Monarch and its predecessor, Data, guaranteed performance under the lease. They further note that Monarch made the rental payments commencing May, 1982. However, Associates only learned of the assignment on June 15, 1983 and it immediately objected thereto. Associates never relinquished its rights under paragraph 11 after it had learned of the assignment (21 NY Jur, Estoppel, Ratification and Waiver, § 96). Monarch's activity prior to Associates' knowledge of the assignment does not effectively establish waiver on Associates' part after its knowledge of the assignment. ¶ Accordingly, the order of the Supreme Court, New York County (Wallach, J.), entered September 2, 1983, should be modified, on the law and the facts, by reinstating the complaint and by making a declaration in favor of the defendant. The order should be further modified by granting plaintiffs 10 days to cure their default through a reassignment of the lease. As modified, the order should otherwise be affirmed.