In re Helen **TOULOUMIS**, Debtor.

Bankruptcy No. 94 B 42249 (SMB).

United States Bankruptcy Court,
S.D. New York.

Aug. 11, 1994.

---

Uvino & Vasilopoulos (Katherine Vasilo-poulos, of counsel), Forest Hills, NY, for debtor.

Rappaport, Hertz, Cherson & Rosenthal, P.C. (Michael J. Tuchiner, of counsel), Forest Hills, NY, for 615 West 183rd St., Apt. Inc.

## MEMORANDUM DECISION GRANTING MOTION FOR RELIEF FROM AUTOMATIC STAY

STUART M. BERNSTEIN, Bankruptcy Judge.

The Debtor's landlord seeks relief from the automatic stay to continue pre-petition eviction proceedings commenced against the Debtor in the Civil Court of New York. While the parties' submissions raise interesting questions of law as to whether the landlord can evict the Debtor—at least under the existing warrant of eviction—these issues involve state law, and can be decided by a state court judge. The Debtor's estate has no interest in the outcome of this dispute, and the landlord's motion is granted.

## FACTS

For some period prior to the filing of her Chapter 7 petition on May 6, 1994, the Debtor occupied a rent stabilized apartment in Manhattan pursuant to a lease that expired on April 30, 1994. The Debtor and her landlord, however, had been embroiled in litigation over her tenancy for nearly two years prior to the petition date. In May, 1992 the Debtor stopped paying rent, and thereafter, the landlord commenced a non-payment summary proceeding against the Debtor in the Civil Court of the City of New York.

On September 14, 1993, the parties entered into a stipulation to resolve the litigation. The Debtor consented to a final judgment in the sum of $6,776.11, with the warrant of eviction to issue forthwith, but execution of the warrant of eviction was stayed through December 18, 1993.[1] The stipulation included other terms of payment, and stated that if the Debtor failed to make the required payments, the landlord could accelerate the execution of the warrant.

The state court subsequently issued the warrant of eviction on December 13, 1993, and following the service of a notice of default and a 72 hour notice, the eviction was scheduled for March 25, 1994. Subsequent state court proceedings, however, stayed the execution of the warrant. As a consequence, the eviction did not take place by the time the Chapter 7 petition was filed.

Thus far, the case is straightforward. In the midst of these state court eviction proceedings, however, and *after* the warrant of eviction had issued, the landlord offered the tenant a renewal lease under the New York City Rent Stabilization Code. The Debtor actually signed and returned the renewal lease after she filed her petition, but the renewal lease related back to and became effective on May 1, 1994, a pre-petition date.[2] In addition to offering and eventually signing the renewal lease, the landlord also accepted the additional security deposit from the Debtor called for by the terms of the renewal lease. The Debtor has not, however, paid the rent due under the renewal lease.

## DISCUSSION

### A. Standards Governing Relief From the Automatic Stay

■ The landlord moves for relief from the automatic stay under 11 U.S.C. § 362(d)(1) and (d)(2). Section 362(d)(1) authorizes the court to grant relief from the automatic stay for "cause", and Section 362(d)(2) authorizes the court to grant relief from the automatic stay, where the act is one against property protected by the stay, if the debtor lacks equity in the property and the property is not necessary for an effective reorganization. The subsections of Section 362(d) are disjunctive, and the movant need satisfy only one of the two to obtain relief. *In re de Kleinman,* 156 B.R. 131, 136 (Bankr. S.D.N.Y.1993); *In re Diplomat Electronics*

---

**1.** The stipulation actually indicates December 18, 1994, but the Court assumes that this was an error.

**2.** In light of the Court's disposition, it is unnecessary to decide whether the renewal lease is a pre-petition or post-petition agreement.

*Corp.,* 82 B.R. 688, 692 (Bankr.S.D.N.Y.1988). The party requesting the relief has the burden of proof on the issue of the debtor's equity in the property, 11 U.S.C. § 362(g)(1), and the party opposing the motion—usually the debtor—has the burden of proof on all other issues. 11 U.S.C. § 362(g)(2).

At a minimum, a motion to continue a pre-petition litigation implicates Section 362(d)(1). *See In re Sonnax Industries, Inc.,* 907 F.2d 1280, 1285 (2d Cir.1990). Although the debtor bears the ultimate burden of disproving the existence of "cause", the movant must initially produce evidence establishing "cause" for the relief he requests. *Id.; In re M.J. & K. Co.,* 161 B.R. 586, 590 (Bankr. S.D.N.Y.1993); *In re Pioneer Commercial Funding Corp.,* 114 B.R. 45, 48 (Bankr. S.D.N.Y.1990). "If the movant fails to make an initial showing of cause, however, the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection." *Sonnax Industries,* 907 F.2d at 1285.

Neither Section 362(d)(1) nor the legislative history defines "cause". *Sonnax Industries,* 907 F.2d at 1285. In *Sonnax,* however, the Court adopted twelve factors,[3] enunciated in *In re Curtis,* 40 B.R. 795, 799– 800 (Bankr.D.Utah 1984), which are weighed to determine whether to allow a creditor to continue litigation in another forum. Only those factors relevant to a particular case need be considered, *Sonnax Industries,* 907 F.2d at 1285, and the Court need not assign them equal weight. *In re Anton,* 145 B.R. 767, 770 (Bankr.E.D.N.Y.1992). When applying these factors and considering whether to modify the automatic stay, the Court should take into account the particular circumstances of the case, and ascertain what is just to the claimants, the debtor and the

estate. *In re M.J. & K.,* 161 B.R. at 590 (citing *In re Mego International Inc.,* 28 B.R. 324, 326 (Bankr.S.D.N.Y.1983)).

In a Chapter 7 case such as this, the landlord's desire to continue a pre-petition eviction proceeding usually has no discernable impact on the bankruptcy case. A residential lease, while theoretically an asset of the estate, is not one that a Chapter 7 trustee will generally assume and assign. In fact, the trustee in this case filed his Report of No Distribution on July 5, 1994, and hence, will not "administer" this or any other asset. Whether he formally abandons the lease, or simply closes the case without administering it, the lease will revert to the Debtor. *See* 11 U.S.C. § 554.

Under these circumstances, the landlord has made a *prima facie* showing that cause exists under Section 362(d)(1) of the Bankruptcy Code to grant relief from the stay to permit the landlord to continue its pre-petition litigation against the Debtor. The lease lacks any connection with the Debtor's bankruptcy case and the litigation in state court will have no prejudice on or affect the interests of either the creditors or the trustee. *See, e.g., Sonnax Industries,* 907 F.2d at 1286.

**B. The Debtor's Opposition**

This is not, however, the usual case, and the Debtor contends that cause does not exist to grant relief from the stay. Further, the Debtor argues, granting the landlord's motion would undercut the Debtor's discharge, and violate the "fresh start" policy of the Bankruptcy Code. The Debtor asserts that the execution of the renewal lease— after the issuance of the warrant of eviction—created a new landlord-tenant relation-

---

**3.** These include the following: (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of

other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) what impact the stay has on the parties and the balance of harms. 907 F.2d at 1286.

ship and rendered the unpaid rent under the old lease dischargeable. Sending the Debtor back to state court to fight eviction for failing to pay discharged rent obligations mocks her bankruptcy.

■ The Debtor's argument presupposes that the renewal lease is separate and distinct from the original lease, creating a new landlord-tenant relationship and obligations wholly independent of those under the expired lease. In this regard, the Debtor's rights in the leased premises must be determined under state law. *Butner v. U.S.*, 440 U.S. 48, 57, 99 S.Ct. 914, 919, 59 L.Ed.2d 136 (1979). Under New York law, the issuance of a warrant of eviction cancels the party's lease and terminates the landlord-tenant relationship. N.Y.Real Prop.Acts. Law § 749(3) (McKinney 1979); *accord In re Sanshoe Worldwide Corp.*, 993 F.2d 300, 304 (2d Cir.1993). The termination is not, however, irreversible, and can be revived, formally or informally, until the warrant is executed. First, the court can vacate the warrant of eviction for "good cause". N.Y.Real Prop. Acts.Law § 749(3). Second, the parties can revive the relationship through their actions or conduct. *In re Sanshoe Worldwide Corp.*, 139 B.R. 585, 594 (S.D.N.Y.1992), *aff'd*, 993 F.2d 300 (2d Cir.1993).

■ The landlord's execution of a renewal lease, following the issuance of a warrant of eviction, revives the landlord-tenant relationship, and waives the landlord's right to proceed under an earlier warrant of eviction. *Spirer v. Adams*, 144 Misc.2d 903, 909, 545 N.Y.S.2d 504, 509 (N.Y.Civ.Ct.1989); *cf. DeSantis v. Randolph*, 103 Misc.2d 573, 576, 430 N.Y.S.2d 457, 460 (N.Y.Sup.1980) (rent stabilization landlord who sent renewal offer to tenant could not thereafter rely on provisions of former Section 54(b) of the Rent Stabilization Code to refuse to renew the lease); *Steinmetz v. Barnett*, 155 Misc.2d 98, 100, 586 N.Y.S.2d 877 (N.Y.Civ.Ct.1992) (rent stabilization landlord's erroneous transmission of renewal lease, which tenant executed and returned, obligated landlord to execute renewal lease and precluded landlord from proceeding to evict the tenant on non-primary residence grounds); *Ambassador Realty Co. v. Wachtel*, 139 Misc.2d 965, 967, 529 N.Y.S.2d 694, 695 (N.Y.Civ.Ct.1988) ("By offering a renewal lease after service of a termination notice the landlord waived the effect of a termination notice."); *Kips Bay Towers Associates v. Lander*, 120 Misc.2d 717, 720, 466 N.Y.S.2d 628, 630–31 (N.Y.Civ. Ct.1983) (landlord's offer of renewal lease to rent stabilized tenant prior to commencement of holdover proceeding mooted proceeding, and required its dismissal).

Here, the issuance and execution of the renewal lease vitiated the December 1993 warrant of eviction, and reestablished the landlord-tenant relationship. In an effort to undercut the effect of a renewal lease, the landlord argues that it sent the renewal lease only because the Rent Stabilization Code required it to do so, and hence, the Court should not infer from that act either the intent or the effect to revive the landlord-tenant relationship. This argument, however, lacks merit.

The landlord was not obligated to renew the tenant's lease under the Rent Stabilization Code. Section 2524.1(a) of the Rent Stabilization Code provides that "[a]s long as the tenant continues to pay the rent to which the owner is entitled, no tenant shall be denied a renewal lease ... except on one or more of the grounds specified in this Code." N.Y.Unconsol.Law, Book 65, §§ 8585–8700, at 700 (McKinney 1987). The tenant not only failed to pay rent for nearly one and a half years, the landlord obtained a warrant of eviction—thereby terminating the landlord-tenant relationship—because of that non-payment. The landlord was not, therefore, required to offer the Debtor a renewal lease under the Rent Stabilization Code. *Cf. Gruen v. Patterson*, 79 A.D.2d 915, 915–16, 434 N.Y.S.2d 420, 422 (1st Dept.) (predecessor to current section 2524.1(a) limited to non-payment situations, and landlord was required to offer renewal lease to tenant who chronically paid his rent late), *aff'd*, 55 N.Y.2d 631, 430 N.E.2d 1306, 446 N.Y.S.2d 253 (1981); *but see Kips Bay Towers Associates v. Lander*, 120 Misc.2d at 719–20, 466 N.Y.S.2d at 630 (when a rent stabilized tenant has failed to pay rent, the landlord must still offer a renewal lease but conditioned on the payment of rent due).

In any event, the landlord offered a renewal lease that was unconditional on its face, and it cannot now impose secret limitations or conditions. The renewal lease in this case does not contain any restrictions or conditions that would alert the tenant, or any third party, that it was offered involuntarily and without the intent to renew the landlord-tenant relationship. Nor does the renewal lease state that in the event the tenant is ultimately evicted, the tenant will have no right to continue to occupy the premises. Under those circumstances, the landlord cannot attempt, through parol or other evidence, to deviate from the unconditional terms of the renewal lease. *Spirer v. Adams*, 144 Misc.2d at 909, 545 N.Y.S.2d at 509. Accordingly, the issuance and execution of the renewal lease revives the landlord-tenant relationship between the parties, and vitiates the warrant of eviction. This result prevents the landlord from proceeding against the Debtor, at least with respect to the December 1993 warrant.

The vitiation of the December 1993 warrant of eviction may represent only a Pyrrhic victory for the Debtor. As a rule, the renewal of an existing lease does not create a new lease; it extends the term of the original lease. *See, e.g., Atkin's Waste Materials, Inc. v. May*, 34 N.Y.2d 422, 426, 314 N.E.2d 871, 873, 358 N.Y.S.2d 129, 132 (1974); *Gulf Oil Corp. v. Buram Realty Co.*, 11 N.Y.2d 223, 226, 182 N.E.2d 608, 609, 228 N.Y.S.2d 225, 226 (1962); *Harvey Holding Corp. v. Satter*, 297 N.Y. 113, 117–18, 75 N.E.2d 619, 621 (1947); *See generally* 1 Joseph Rasch, *New York Landlord and Tenant* § 343, at 433–34 (2d ed. 1971). Under those circumstances, the Debtor remains in default under her existing lease for her failure to pay rent, and this default dates back to May 1992. Accordingly, the landlord may be able to return to state court and seek a new warrant of eviction, at least to the extent that the Debtor failed to pay rent after the issuance of the prior warrant.

The Debtor's second erroneous assumption in her opposition is that her discharge permits her to remain in possession of the premises without paying the rent that accrued under the expired lease. If the renewal lease were a new lease creating rights and obligations that are independent of the expired lease, her argument might have merit. But this is not the case, and she continues to be in default under the only lease she ever had. As a result, although the discharge prevents the landlord from getting a personal judgment against the Debtor for the unpaid, pre-petition rent, it does not prevent the landlord from evicting the Debtor for its non-payment:

> Except that the debtor's discharge in bankruptcy absolves her of the debt for rent, the landlord is entitled to whatever his remedies would be in the courts of New York State, absent bankruptcy, for breach of a lease. The discharge in bankruptcy of the accrued debt for rent does not constitute the payment of rental. A discharge in bankruptcy does not constitute a payment, or extinguishment, or the cancellation of the debt. Despite the discharge, a landlord can still avail itself of its statutory remedy to recover possession of premises for nonpayment of rent.

*In re Hepburn*, 27 B.R. 135, 136 (Bankr. E.D.N.Y.1983); *accord Stewart v. Underwood*, 146 Ariz. 145, 148, 704 P.2d 275, 278 (Ct.App.1985); *Nadine Properties, Inc. v. Henry Bergmann & Co.*, 153 Misc.2d 695, 698–99, 583 N.Y.S.2d 114, 117 (N.Y.Civ.Ct. 1991).

## CONCLUSION

The landlord is granted relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1), to continue its pre-petition litigation against the Debtor, and in light of this decision, the Court does not reach the issue of relief from the stay under Section 362(d)(2). Because the renewal lease does not create a new lease, but instead, extends the original lease, the Debtor's discharge does not prevent the landlord from evicting her for nonpayment of rent under that lease. SETTLE ORDER ON NOTICE.