**B.N. REALTY ASSOCIATES,**
Appellant,

v.

**Benjamin LICHTENSTEIN, Appellee.**

**No. 99 CIV. 2158 RWS.**

United States District Court,
S.D. New York.

Sept. 9, 1999.

Jeffrey F. Cohen, Bronx, NY, for Appellant.

Marc T. Danon, New York City, for Appellee.

## OPINION

SWEET, District Judge.

Appellant B.N. Realty Associates ("B.N.") has appealed from an order of the Bankruptcy Court denying B.N.'s motion to lift the automatic stay. For the reasons set forth below, the order is vacated and remanded for proceedings consistent with this opinion.

### Prior Proceedings

B.N. is the landlord of the Debtor-appellee, Benjamin Lichtenstein ("Lichtenstein"). Lichtenstein occupies an apartment in a multiple dwelling owned by B.N. in the Riverdale section of the Bronx pursuant to a rent-stabilized lease (the "Lease"). On or about August 17, 1998, Lichtenstein filed a Chapter 7 voluntary petition in Bankruptcy. The only creditors listed in Lichtenstein's petition were

the Internal Revenue Service—a creditor with which Lichtenstein, prior to the filing of the petition, had worked out a payment plan to satisfy existing arrears—and B.N. At the time of the filing, two lawsuits brought by B.N. were pending against Lichtenstein for unpaid rent. The first was a 1994 New York State Supreme Court action in Bronx County seeking $42,544.32 in rent for the period from December 1, 1988 through July 31, 1993. The second, filed in June 1998, was a non-payment summary proceeding in the Housing Court of Bronx County seeking $12,611.87 in rent, or possession of the premises.[1] Neither of these suits had yet resulted in a judgment against Lichtenstein when he filed his Chapter 7 petition, thereby triggering the automatic stay provision of Title 11 of the United States Code (the "Bankruptcy Code"), and preventing the actions in the State courts from going forward.

In a motion dated November 18, 1998, B.N., pursuant to Sections 362(d)(1) and (d)(2), and Section 365, of the Bankruptcy Code, and Rule 4001 of the Federal Rules of Bankruptcy Procedure, sought relief from the automatic stay in order to continue the Housing Court proceeding and the Supreme Court action, and for leave to file a new action in state court to seek payment for post-petition rent, or possession. B.N. also sought to extend its time to file objections.

On January 7, 1999, the Honorable Prudence Carter Beatty heard the motion. After argument, Judge Beatty denied B.N.'s request to lift the automatic stay with regard to the actions pending in both the State Supreme Court and the Housing Court. Judge Beatty granted permission for B.N. to pursue any claims for post-petition rent. In a separate order, the extension of time was granted.

Notice of appeal was filed on March 19, 1999, and oral argument was heard on June 11, 1999, at which time the appeal was deemed fully submitted.

## Discussion

### I. Jurisdiction

This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 158(a)(1), which gives the Federal District Courts jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy judges entered in cases and proceedings referred to bankruptcy judged under 28 U.S.C. § 157. Motions to terminate, annul, or modify the automatic stay are referred to bankruptcy judges under 28 U.S.C. § 157(b)(2)(G).

### II. Standard of Review

The standard of review for bankruptcy appeals is set forth in Bankruptcy Rule 8013, which provides:

> On an appeal, the district court or the bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judgment, order, or decree, or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the Bankruptcy Court to judge the credibility of witnesses.

Thus, the Bankruptcy Court's findings of fact are reviewed for clear error. See Shugrue v. Air Line Pilots Assoc. Int'l (In re Ionosphere Clubs, Inc.), 922 F.2d 984, 988 (2d Cir.1990). Conclusions of law are reviewed de novo. See id. Because the decision of whether to lift an automatic stay is committed to the discretion of the bankruptcy judge, a district court may overturn a denial of a motion to lift a stay only upon showing of abuse of discretion. See Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.), 907 F.2d 1280, 1286 (2d Cir.1990). In this context, "[a]n abuse

---

1. B.N. had sought possession in the first action as well, but had been denied that remedy by the State Supreme Court judge.

of discretion may take the form of the application of erroneous legal principles or procedures, [or] findings of fact which are clearly erroneous." *LTV Corp. v. Miller (In re Chateaugay Corp.),* 109 B.R. 613, 619 (S.D.N.Y.1990), *appeal dismissed without prejudice and remanded on other grounds,* 924 F.2d 480 (2d Cir.1991).

### III. *Whether the Bankruptcy Court Abused Its Discretion In Refusing to Lift the Automatic Stay*

Section 362(a) of the Bankruptcy Code provides for an automatic stay of other judicial proceedings upon filing of a Chapter 7 petition. Section 362(d) provides the grounds for relief from the stay. In the prior proceedings, B.N. maintained that relief was required by operation of Sections 365(d)(1) and (g), which provide that an unexpired lease not "assumed" by the trustee in a Chapter 7 bankruptcy is deemed "rejected" and breached. The bankruptcy judge disagreed, holding that a residential rent-stabilized lease not assumed by a Chapter 7 trustee was "abandoned" back to the debtor. Furthermore, the judge held that, given the overriding purpose of the discharge in bankruptcy to enable the debtor to make a "fresh start," the stay would not be lifted with regard to B.N.'s pending proceedings in the New York State courts. On appeal, B.N. urges reversal on the grounds that the bankruptcy judge ignored the plain meaning of Section 365 and the thrust of both New York State and federal case law on the issue.

For the reasons discussed below, this Court holds that the bankruptcy judge correctly interpreted Section 365 as effecting an abandonment of the lease back to Lichtenstein. However, the judge erred in concluding as a matter of law that abandonment operated as a bar to lifting the automatic stay. The issue of whether to lift the stay requires a factual determination based on a number of factors which—according to the record of the proceedings below—was not undertaken. For this reason, the order is vacated and the case remanded to the bankruptcy court with instructions to undertake that determination in a manner consistent with the legal standards set forth in this opinion.

The ensuing discussion will first address interpretation of Section 365, then move to consideration of Section 362.

### A. *Section 365*

The provisions of Section 365 pertinent to this appeal are as follows:

(a) Except as provided ... in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

(b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee-

    (A) cures, or provides adequate assurance that the trustee will promptly cure, such default;

    (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

    (C) provides adequate assurance of future performance under such contract or lease.

. . . .

(c) The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if-

    (1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or

the debtor in possession, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and

(B) such party does not consent to such assumption or assignment; . . .

. . . .

(d)(1) In a case under chapter 7 of this title, if the trustee does not assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor within 60 days after the order for relief, or within such additional time as the court, for cause, within such 60–day period, fixes, then such contract or lease is deemed rejected.

. . . .

(g) [T]he rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease-

(1) if such contract or lease has not been assumed under this section or under a plan confirmed under chapter 9, 11, 12, or 13 of this title, immediately before the date of the filing of the petition; . . .

11 U.S.C.A. § 365 (West 1993 & Supp. 1999). It is undisputed by the parties that the trustee in this case did not assume or reject the Lease within the sixty day period required under § 365(d)(1). B.N. maintains that, under a plain reading of the language of Section 365(d)(1), the Lease must therefore be deemed rejected. Furthermore, under § 365(g), a rejected lease is deemed to be breached by the debtor. For these reasons, B.N. maintains that it is entitled to relief from the automatic stay.

The bankruptcy judge, however, read § 365(d)(1) in light of § 365(c), stating that "rent stabilization . . . is an applicable law which excuses you from having to accept performance from a third party, so the Trustee could never assume or assign this lease." *Transcript of Hearing on Motion by B.N. Realty for Order Extending Time,*

*Relief From Stay or Adequate Protection,* (*In re Lichtenstein,* No. 98–45821, Bankr. S.D.N.Y., Jan. 7, 1999), at 23 (hereinafter "Transcript"). Furthermore, since the trustee "could never have assumed it, he couldn't . . . have been in the position to have rejected it in the sense that rejection has the effect of terminating the contract. . . . [T]he rejection in this sense is [an] abandonment, meaning that he abandons it as property of the estate and any property that's abandoned by a Trustee reverts in title to the debtor." *Id.* at 33–34.

B.N. on this appeal has urged reversal on the grounds that the Bankruptcy Court ignored the plain meaning of the statutory language, overreached its authority by interfering with a realm controlled by state law, and ignored prevailing federal case law on the issue. For the reasons given below, this Court finds that the plain meaning of Section 365 is not dispositive regarding the effect of rejection under Section 365(d) and breach under Section 365(g). Moreover, the case law construing Section 365 supports the interpretation of the bankruptcy judge, not the one urged by B.N. Furthermore, the "realm" is not controlled by state law. However, because the bankruptcy judge reached the correct result through an incorrect analysis, the discussion below will of necessity be somewhat elaborate.

There is little question that the "plain meaning rule" governs interpretation of the Bankruptcy Code. "[T]he Supreme Court has consistently decided bankruptcy cases following a textualist approach for statutory interpretation, more commonly known as the plain meaning rule[,] . . . which presumes the intent of Congress is captured in the language of the statute and that the sole function of the courts is to enforce it according to its terms." Dana C. Siragusa, Comment, *In re Bacon: The Extent of a Debtor–Tenant's Right in Public Housing Under § 525(a) of the Anti–Discrimination Clause,* 15 Bankr.Dev. J. 555, 561 (1999)

(internal quotation marks omitted). In *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), the Court, construing Section 506(b) of the Bankruptcy Code, declared, "[A]s long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute.... [W]here, as here, the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" *Id.* at 240–41, 109 S.Ct. 1026 (*quoting Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917)).

■ As B.N. urges, in a Chapter 7 case an unexpired lease is deemed rejected if not assumed by the trustee within sixty days of the order of relief, and a rejection under Section 365 constitutes a breach of the lease. *See Brief of Appellant B.N. Realty Associates*, Dkt. No. 7, at 13 ("Brief of Appellant"). There is nothing ambiguous about the language of § 365(d)(1) and (g). The bankruptcy judge's alternative reading is unpersuasive. It may be true that, in a rent-stabilized lease situation, the trustee has no real power to assume the lease due to § 365(c), but this does not change the unambiguous terms of § 365(d)(1) and (g).

■ Nevertheless, the inquiry does not end here. Although it is not entirely clear from the record of the prior proceedings nor from the parties' briefs on appeal, the parties and the bankruptcy judge apparently assumed that breach under § 365(g) would constitute termination of the Lease, thereby removing it from the protection of the automatic stay. This assumption is incorrect. "Although Section 365(g) provides that the rejection of a lease constitutes a breach, the breach does not terminate an unexpired lease." *Couture v. Burlington Housing Authority (In re Couture)*, 225 B.R. 58, 64 (D.Vt.1998). "[L]ease rejection is not synonymous with lease termination.... The former is a *bankruptcy concept* that determines

whether the estate will administer the lease asset." *In re Bacon*, 212 B.R. 66, 69 (Bankr.E.D.Pa.1997) (*citing* Jay Lawrence Westbrook, *A Functional Analysis of Executory Contracts*, 74 Minn. L.Rev. 227, 228 (1989)) (emphasis added). Consequently, while it is clear from the statute that the Lease was deemed rejected by the trustee (for not assuming it within sixty days), and that such rejection constituted a breach under § 365(g), the *effect* of such rejection and breach remains ambiguous and requires examination of the case law.

■ Although the Court of Appeals in this Circuit has not specifically addressed the issue, "it is generally agreed ... that the automatic rejection of a lease pursuant to § 365(d)(1) *effects an abandonment of the lease to the debtor.*" *Bacon*, 212 B.R. at 68 (*citing In re Day*, 208 B.R. 358, 365 (Bankr.E.D.Pa.1997); *In re Rosemond*, 105 B.R. 8, 9–10 (Bankr.W.D.Pa.1989); *In re Szymecki*, 87 B.R. 14, 15 (Bankr. W.D.Pa.1988); *In re Knight*, 8 B.R. 925, 929 (Bankr.D.Md.1981)) (emphasis added). *See also In re Touloumis*, 170 B.R. 825, 828 (Bankr.S.D.N.Y.1994) ("A residential lease, while theoretically an asset of the estate, is not one that a Chapter 7 trustee will generally assume and assign.... Whether he formally abandons the lease, or simply closes the case without administering it, the lease will revert to the Debtor."). There seems little reason to reject the prevailing view of the cases. Termination of a lease "is a state law concept that is prescribed by the common law or statutes of the state in which the property is located." *Bacon*, 212 B.R. at 69 (citing cases). Abandonment of the lease back to the debtor seems the most plausible way to read the effect of deemed rejection under Section 365(d)(1) and breach under Section 365(g).

B.N. relies for the proposition that Section 365 should be read the other way on *In re Touloumis* and *In re Hepburn*, two cases which granted landlords relief from

the automatic stay to pursue eviction proceedings against residential tenants in New York State courts. Primary reliance is placed on *Touloumis,* which B.N. maintains "construed Section 365(d) according to its plain meaning." Brief of Appellant, at 17. A careful reading of *Touloumis,* however, reveals that Section 365(d) is *never mentioned* in the opinion and has nothing to do with the case. In fact, as indicated above, *Touloumis* expressly supports the position stated by the bankruptcy judge that an unassumed lease is abandoned back to the debtor. *See Touloumis,* 170 B.R. at 828.

*Hepburn,* on the other hand, does address Section 365(d) and acknowledges the possibility of reading the statute as B.N. urges. *See In re Hepburn,* 27 B.R. 135, 137 (Bankr.E.D.N.Y.1983). However, the discussion of § 365(d) is clearly dicta. *Hepburn* realizes that reading Section 365 as B.N. urges "might cause a forfeiture of a lease where there was no other default," *id.,* a result Congress surely could not have intended. *Hepburn* is careful to articulate that the landlord in that case was free to pursue New York State court eviction proceedings not by operation of Section 365, but because the bankruptcy proceeding had already closed, thereby terminating the automatic stay. *See id.* Thus, B.N. is not aided by *Hepburn.*

For the reasons articulated above, the bankruptcy judge did not apply "erroneous legal principles," *Chateaugay,* 109 B.R. at 619, in determining that a Chapter 7 trustee's failure to assume a residential lease under Section 365 does not terminate the lease but instead effects an abandonment of the lease back to the debtor. Therefore, that portion of the bankruptcy court's order is affirmed.

### B. *The Effect of Abandonment of the Lease*

■ For reasons not entirely clear from the record below, the bankruptcy judge held that the abandonment of the Lease back to the debtor effectively precluded continuation of eviction proceedings:

> [I]t would be a misconstruction of the [Bankruptcy Code] or the fundamental purpose of the discharge ... to hold that these provisions result in the debtor losing their leasehold because there's no actual order providing for [the leasehold] to be assumed by the debtor ... before it's deemed abandoned.
>
> . . . .
>
> [W]hen you look at the overriding purpose to get a discharge, it would make no sense to [leave] the very debtor that you wanted to help with no housing.

Transcript at 32–33. The bankruptcy judge, however, cited no cases in support of her view, nor does Lichtenstein in his brief on appeal. In fact, as B.N. has maintained in this appeal, there is considerable persuasive authority to the contrary. "As the lease is no longer property of the estate, the bankruptcy courts generally grant private landlords relief from the stay to exercise their state law remedy of ejectment as a result of contractual defaults under the rejected lease." *Couture,* 225 B.R. at 64; *accord Bacon,* 212 B.R. at 68–69; *Touloumis,* 170 B.R. at 828. Lichtenstein attempts to distinguish *Touloumis* on the grounds that, in that case, "the landlord had already obtained a money judgment and a warrant of eviction against the debtor." *Brief of Appellee Benjamin Lichtenstein,* at 7. Because "the issuance of the warrant of eviction terminates the lease [in New York,] ... [t]he lease lacks any connection with the Debtor's bankruptcy case and the litigation in state court will have no prejudice on or affect the interests of either the creditors or the trustee." *Id.* at 8 (internal quotation marks omitted).

Lichtenstein's reading, however, misconstrues *Touloumis. Touloumis* reasoned that—despite an already-issued warrant of eviction from state court—the lease at issue was *not* terminated, because the landlord, after obtaining the warrant of evic-

tion, had executed a renewal lease with the tenant, thereby vitiating the warrant. *See Touloumis,* 170 B.R. at 829. Furthermore, under New York law, "the renewal of an existing lease does not create a new lease; it extends the term of the original lease." *Id.* at 830. The court thereby reasoned that the debtor remained in default under the existing lease, and the landlord could return to state court to seek a new warrant of eviction. *See id. Touloumis* therefore cannot be distinguished from the instant case on the grounds claimed by Lichtenstein.

Moreover, Lichtenstein does not make clear why it should make any difference whether the warrant of eviction had already been issued in state court prior to the bankruptcy filing. Section 362(a) operates as a stay not only of the commencement or continuation of judicial proceedings against the debtor, but of the enforcement against the debtor of a judgment obtained before the commencement of the bankruptcy case. *See* 11 U.S.C.A. § 362(a)(1)-(2). If the stay applies, therefore, it should apply both to continuation of state court eviction proceedings and to enforcement of an eviction warrant. *See 332–4 West 47th St. Assocs. v. Muniz (In re Muniz),* No. 98 Civ. 6085(AKH), 1999 WL 182588, at *4 (S.D.N.Y. Mar. 31, 1999) ("[A rent-stabilized] tenant has a possessory interest in his residence, even after a warrant of eviction has issued, as long as he has not actually been dispossessed. That is a sufficient interest to authorize the automatic stay in bankruptcy.").

The cases cited above make clear that the bankruptcy judge was incorrect as a matter of law simply to assume that "it would be a misconstruction of the [Bankruptcy Code] . . . when you look at the overriding purpose . . . to [leave] the very debtor you wanted to help with no housing." Transcript at 32–33. While there may be situations where denial of relief from the stay for a landlord seeking to evict is warranted, such denial must be predicated on a thorough consideration of the statutory language of Section 362(d), to which this opinion now turns.

### C. *Section 362*

Section 362(a) of the Bankruptcy Code provides that: "Except as provided in subsection (b) of this section, a petition filed under section 301 . . . of this title . . . operates as a stay, applicable to all entities, . . . of . . . the commencement or continuation . . . of a judicial . . . action or proceeding against the debtor. . . ." 11 U.S.C.A. § 362(a) (West 1993 & Supp. 1999). A voluntary petition in Chapter 7 is a "petition filed under section 301." *Id.* § 301.

Relief from the stay, however, is available under Section 362(d), which provides:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . .

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

(2) with respect to a stay of an act against property under subsection (a) of this section, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization. . . .

*Id.* § 362(d). "The subsections of Section 362(d) are disjunctive, and the movant need satisfy only one of the two to obtain relief." *Touloumis,* 170 B.R. at 827.

In *Sonnax Industries, Inc. v. Tri Component Products, Inc. (In re Sonnax Industries, Inc.),* 907 F.2d 1280 (2d Cir.1990), the Court of Appeals elaborated on the meaning of "cause" in Section 362(d)(1). The Court began by noting that "[n]either the statute nor the legislative history defines the term 'for cause' and the legislative history gives only very general guidance." *Id.* at 1285. Thus, "the 'facts of each request will determine whether relief is appropriate under the circumstances.'" *Id.* at 1286 (*quoting* H.R.Rep. No. 95–595, at 343–44 (1977, *reprinted in*

1978 U.S.C.C.A.N. 6300). "The burden is on the moving party to make an initial showing of 'cause' for relief from the stay. Only if the movant makes such a showing does any burden shift to the debtor; absent a showing of cause, the court should simply deny relief from the stay." *Mazzeo v. Lenhart (In re Mazzeo),* 167 F.3d 139, 142 (2d Cir.1999) (*citing Sonnax,* 907 F.2d at 1285; *In re Boodrow,* 126 F.3d 43, 48 (2d Cir.1997)). The *Sonnax* court adopted a list from *In re Curtis,* 40 B.R. 795 (Bankr.D.Utah 1984), of twelve potentially relevant factors in deciding whether to lift the automatic stay to permit litigation to continue in another forum:

(1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

*Sonnax,* 907 F.2d at 1286. The *"Sonnax* factors" continue to supply the doctrinal framework in this Circuit. *See Mazzeo,* 167 F.3d at 143. "Not all of these factors will be relevant in every case." *Id.*

■ Relief from the automatic stay of an act against property is possible under § 362(d)(2) if the debtor has no equity in the property and the property is not necessary for an effective reorganization. *See* 11 U.S.C.A. § 362(d)(2) (West 1993 & Supp.1999). Both elements of the test must be met. *See* 3 Collier on Bankruptcy ¶ 362.07[4], at 362–95 (Lawrence P. King ed., 15th ed. rev.1999). Since a Chapter 7 petition does not contemplate reorganization, the only issue in a Chapter 7 case under 362(d)(2) would be whether a tenant's lease gave him equity in the property.

■ As previously indicated, B.N.'s motions in the bankruptcy court and in this appeal have concentrated on the interpretation of Section 365. For the reasons discussed above, the terms of Section 365 by itself do not provide relief from the automatic stay. Section 362(d) must be considered independently of Section 365. Unfortunately, neither the parties (on appeal or in the prior proceedings) nor the bankruptcy judge appears to have done so. There is no analysis in the transcript of the proceedings below of either § 362(d)(1) or (d)(2), let alone of the *Sonnax* factors.

■ As indicated above, while there may be situations where denial of relief from the stay for a landlord seeking to evict would be warranted, such denial must be predicated on a thorough consideration of the statutory language of Section 362(d) and its elaboration in *Sonnax* and elsewhere. *C.f. Mazzeo,* 167 F.3d at 142–43 (remanding case to bankruptcy court for failure to make findings sufficient to determine whether bankruptcy court had abused its discretion in denying relief from automatic stay). If anything, the record in this case suggests reasons why relief from the stay should *not* be denied. Apparently, Lichtenstein's only creditors are the IRS—with whom he had already worked out a payment schedule, perhaps thereby obviating the need for a bankruptcy petition—and B.N. It is possible that Lichtenstein filed his Chapter 7 petition solely to forestall eviction proceedings in State court. This District has indicated that "The process of bankruptcy should not

automatically become an added feature of the statutory protections given to tenants by New York's rent-control and rent-stabilization laws." *Muniz,* 1999 WL 182588 at *5. The bankruptcy process may not be used for the sole purpose of thwarting eviction proceedings in the State courts. *See id.; see generally* Maria Lerman Hutkin, Note, *Using Bankruptcy to Pay the Rent via the Automatic Stay,* 63 S. Cal. L.Rev. 181 (1989) (arguing that when tenants use the automatic stay to avoid eviction, the purposes of bankruptcy are not served, landlord-creditors are unduly burdened, and tenants are ultimately harmed). Nevertheless, it would be inappropriate for this Court simply to reverse the order denying relief from the automatic stay. The transcript of the prior proceedings indicates that the bankruptcy judge denied relief as a matter of law. As this determination was erroneous, the proper course is to remand the case to the bankruptcy court to consider fully whether relief is appropriate under Section 362(d)(1) (and its elaboration in *Sonnax* ) or (d)(2).

*Conclusion*

For the reasons given above, the order of the bankruptcy court denying relief from the automatic stay is vacated and the matter is remanded to the bankruptcy court for further consideration consistent with this opinion.

It is so ordered.