*526 OPINION OF THE COURT
Cheryl J. Gonzales, J.
Respondent seeks an order dismissing the petition in this holdover proceeding on the grounds that: (1) respondent was not granted an opportunity to cure the alleged nuisance; (2) petitioner waived the right to evict respondent by accepting rent and restoring respondent’s tenancy; and (3) respondent cured the nuisance.
Petitioner, a limited profit housing company, served respondent with a 10-day notice dated October 14, 2004 which stated that as of November 2, 2004, her tenancy was terminated. The notice alleged that respondent’s son, Shernard Jeffrey, engaged in antisocial, disruptive, destructive, dangerous and/or illegal behavior on or about September 7, 2004 when he was arrested and charged with criminal possession of a BB gun in petitioner’s housing complex. Petitioner further alleged that this behavior violated paragraphs 10 (b), 11, 12 and 13* of respondent’s lease.
In a stipulation dated February 28, 2005, the parties settled a nonpayment proceeding under index No. 55921/04. Petitioner accepted respondent’s tender of the sum of $5,956. Pursuant to paragraph 5 of the stipulation, the judgment and warrant were vacated, the landlord-tenant relationship was restored and the proceeding was discontinued.
Respondent receives a Department of Housing and Urban Development subsidy and is required to complete the requirements for recertification on an annual basis. This process requires that respondent provide information as to changes with regard to the members of the household and changes in the income of household members. As part of the process, respondent submitted affidavits attesting to the fact that her son, who was named in the notice of termination, no longer resided in the apartment. Respondent completed this process on March 16, 2005, and respondent was offered a new lease commencing on April 1, 2005. A copy of the recertification form provided by respondent indicates that respondent and one other occupant *527 are on record as residents in the apartment. The family member named in both termination notices as the person who created the nuisance is not named in the family composition on the recertification form.
Petitioner subsequently served an amended notice to terminate on April 8, 2005 which was identical to the first notice, except that the effective date of termination was April 26, 2005.
In opposition papers, petitioner contends that only the first notice of termination was vitiated by its acceptance of rent, and that this waiver was without prejudice to the commencement of a subsequent proceeding. Petitioner also points to the nonwaiver and merger clause in the lease which provides that any waiver must be in writing signed by the landlord. However, respondent argues that petitioner’s completion of the recertification process and effective renewal of respondent’s lease, with knowledge of the breach, contradict the termination of the tenancy. Petitioner claims that it did not waive respondent’s breach by offering a renewal lease since it was required to offer a renewal lease, and there is no exception to this requirement based on a claim that the tenant violated a substantial obligation of the tenancy.
Petitioner’s reliance on Kibel v Appel (147 Misc 2d 141 [1990]), in support of its contention that the offer of a renewal lease did not vitiate the notice of termination, is misplaced. Kibel dealt with a rent-stabilized tenancy and the mandatory lease renewal requirement under the law. In paragraph 6 of its petition, petitioner alleges that it is exempt from the Rent Stabilization Law of 1969, as amended, as it is owned by a limited profit housing company and organized pursuant to article II of the Private Housing Finance Law. Petitioner’s exemption from the laws governing rent stabilization means that the rent stabilization rules mandating lease renewals are not applicable to petitioner. No other provision of law which mandates that petitioner offer lease renewals is offered in support of petitioner’s argument. Paragraph 2 of respondent’s lease provides that after the end of the initial term, the agreement will continue for successive two-year terms unless automatically terminated pursuant to paragraph 38. This section sets forth the grounds and the procedure for termination of the lease by the landlord and the tenant.
It is undisputed that at the time of the lease renewal the first notice of termination was already vitiated by the restoration of *528 the tenancy, acceptance of rent and the express terms of the stipulation in the nonpayment proceeding (discussed supra). Petitioner offers no explanation as to why it proceeded with a lease renewal instead of termination as provided pursuant to paragraph 38 of the lease. This lease provision specifically authorizes automatic termination based on the sections of the lease cited in both notices of termination. Petitioner claims that the nonwaiver clause of the lease should be enforced. However, courts have found that the existence of a nonwaiver clause does not preclude a finding that there was a waiver (see Atkin’s Waste Materials v May, 34 NY2d 422 [1974]; Lee v Wright, 108 AD2d 678 [1st Dept 1985]; P & D Cards & Gifts v Matejka, 150 AD2d 660 [2d Dept 1989]).
“[A] waiver, the intentional relinquishment of a known right, may be accomplished by express agreement or by such conduct or failure to act as to evince an intent not to claim the purported advantage” (Hadden v Consolidated Edison Co. of N.Y., 45 NY2d 466, 469 [1978] [citation omitted]). In ATM One, LLC v Albano (2001 NY Slip Op 50103[U]), the court inferred that a lease renewal could be construed as a waiver. However, in that case the tenant failed to prove that the landlord had knowledge of the breach; therefore the court could not find that there was a waiver. It cannot be disputed that petitioner had knowledge of the breach before the lease renewal, as the first notice of termination was served prior to the renewal of the lease.
Petitioner has stated no compulsory grounds for providing the renewal lease, or offered any rationale for its failure to serve a new termination notice after the stipulation dated February 28, 2005. Petitioner’s course of conduct has only served to reassure the tenant that petitioner intends the tenancy to continue. Forfeiture provides a remedy for landlords to protect their rights which would otherwise be substantially impaired. In this instance, the offender no longer resides at the property, there is no indication that the nuisance is a continuing problem, and the respondent has made efforts to cure damage accrued by the breach.
Notwithstanding the nonwaiver clause of the lease, petitioner’s reaffirmance of the tenancy by two separate acts precludes forfeiture of the lease under these circumstances. Petitioner’s actions after the first notice of termination served to lull respondent into a false sense of security that her tenancy would continue. Petitioner agrees that its restoration of the tenancy in *529 the nonpayment action vitiated the first notice of termination, and petitioner is unable to substantiate its position that it was required to offer a renewal lease. Therefore, petitioner cannot enforce forfeiture when it has waived its right to do so.
Based on the foregoing, respondent’s motion is granted and the petition is dismissed.

 Paragraph 10 (b) prohibits criminal and unlawful activities in the apartment or on the project by the tenant and members of the tenant’s household. Paragraph 11 obligates the tenant to obey all city, state and federal laws. Paragraph 12 defines objectionable conduct as, inter alia, conduct in violation of applicable laws and the lease which results in conditions dangerous, hazardous and detrimental to proper enjoyment of their apartments by other tenants. Paragraph 13 obligates the tenant to comply with the rules appended to the lease and any other rules promulgated by the landlord in writing.