**In re Eloise HENDERSON, Debtor.**

**Bankruptcy No. 99 B 42916(SMB).**

United States Bankruptcy Court,
S.D. New York.

Feb. 17, 2000.

Gutman, Mintz, Baker & Sonnenfeldt, P.C., New Hyde Park, NY, for Neighborhood Partnership II, H.D.F.C.; Arthur G. Mariano, of counsel.

Eloise Henderson, New York City, debtor pro se.

**MEMORANDUM DECISION REGARDING LANDLORD'S MOTION FOR REARGUMENT OF MOTION FOR RELIEF FROM AUTOMATIC STAY AND/OR CLARIFICATION OF CERTAIN ORDERS ENTERED IN CONNECTION THEREWITH**

STUART M. BERNSTEIN, Chief Judge.

Neighborhood Partnership II, H.D.F.C. (the "landlord") seeks reargument of its motion for relief from the stay to reinstate and continue an eviction proceeding com-

menced against Eloise Henderson (the "debtor") in the Civil Court of New York. In the alternative or in addition, the landlord asks for clarification of certain orders entered by this Court in connection with the prior proceedings. For the reasons that follow, the landlord's motion for reargument is granted. Upon reargument, I adhere to the earlier decision granting relief from the automatic stay to the landlord.

## BACKGROUND

Since March of 1989, the debtor has occupied a rent stabilized apartment on 113th Street in Manhattan, allegedly as a month-to-month tenant.[1] The building is net leased by the landlord as managing agent under the auspices of the New York City Department of Housing Preservation and Development. The debtor stopped paying rent sometime in 1997, as a result of a dispute with the landlord over conditions in the building, and the landlord commenced a non-payment proceeding sometime prior to April 1999.[2]

The debtor filed this voluntary chapter 7 petition on May 5, 1999. The filing stayed the non-payment proceeding. 11 U.S.C. § 362(a). On or about June 25, 1999, the landlord moved for relief from the automatic stay. The landlord claimed in its motion that the debtor had failed to pay post-petition rent in the amount of $250.00 for June 1999, owed $7,250.00 in rental arrears as of the petition date, and lacked equity in the premises. The debtor opposed the motion, claiming, *inter alia,* that she had attempted to pay post-petition rent on several occasions. She claimed to have sent money orders by registered mail to the landlord's registered post office box, but her letters were never claimed by the landlord and were ultimately returned to her.[3]

The landlord's motion came before former Bankruptcy Judge James L. Garrity, Jr. on August 31, 1999. By then, the bankruptcy case was more than 90 days old. Judge Garrity concluded that the chapter 7 trustee's failure to assume the lease within sixty days resulted in its being "deemed rejected,"[4] the rejection extinguished any interest the estate or the debtor had in the lease, and the debtor had to vacate her apartment. (*See* Transcript of hearing, held Aug. 31, 1999 ("8/31 Tr."), at 6, 7, 14.) Accordingly, Judge Garrity granted the stay relief motion and directed the issuance of the warrant of eviction forthwith. (*See* Order, dated Aug. 31, 1999 (the "Eviction Order"[5]).) However, he stayed execution of the warrant until November 1, 1999, provided the debtor paid the September and October rent in a timely manner. (*Id.*)[6]

---

1. The debtor maintains that she is a rent-stabilized tenant.

2. An earlier non-payment proceeding had been commenced by the City of New York, but was discontinued without prejudice when the landlord became the managing agent of the building in or about October 1998.

3. The debtor also maintained that her pre-petition rental arrears were attributable to financial difficulties associated with a physical disability caused by the poor condition of the building. According to the debtor, the landlord has a history of falsely accusing tenants of failing to pay rent. Finally, she claimed that even if she lacked equity in the premises, the premises were necessary for an effective reorganization, and the landlord must demonstrate beyond a reasonable doubt that she failed to pay post-petition rent.

4. Section 365(d)(1) of the Bankruptcy Code states:

   In a case under chapter 7 of this title, if the trustee does not assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor within 60 days after the order for relief, or within such additional time as the court, for cause, within such 60–day period, fixes, then such contract or lease is deemed rejected.

5. The Eviction Order is annexed as an exhibit to the debtor's Affirmation in Opposition, dated Jan. 12, 2000.

6. The scope of the stay has apparently caused some confusion. Nevertheless, it is clear from the transcript that the October 31st date was a "drop dead" date, and the warrant of

The debtor filed an appeal from the Eviction Order, and sought a stay pending appeal from the bankruptcy court. Judge Garrity heard the motion on September 15th, and reiterated his earlier conclusion that rejection of the lease removed it from the estate. Hence, the stay no longer prevented the landlord from commencing an eviction proceeding. (*See* Transcript of hearing, held Sept. 15, 1999, at 4–5.) Nevertheless, he stayed the effect of the Eviction Order pending the debtor's appeal (again conditioned on timely payment of rent) based on the landlord's failure to appear. (*Id.* at 5–6, 6–7, 8–9; *see* Order, dated Sept. 15, 1999 (the "Stay Order" [7]).)

On September 21, 1999, the landlord moved to vacate the Stay Order, claiming that it was never served with the debtor's motion, and that the debtor had not paid September rent. At the ensuing hearing held on September 23, 1999, Judge Garrity reconsidered his decision to grant a stay pending appeal. First, he assumed— wrongly, it turns out—that the debtor had received her discharge,[8] and pursuant to § 362(c)(2)(C), the automatic stay had already expired.[9] (*See* Transcript of hearing, held Sept. 23, 1999 ("9/23 Tr."), at 8.) Second, referring to the district court's decision in *B.N. Realty Associates v. Li-*

*chtenstein*, 238 B.R. 249 (S.D.N.Y.1999), which was not decided until September 9, 1999, Judge Garrity adhered to "the better view" that rejection does not terminate the lease, but instead, results in an abandonment of the lease to the debtor. (9/23 Tr. at 8–9.)

Having reconsidered the factual and legal bases for stay relief, Judge Garrity vacated the Stay Order. Initially, he observed that the automatic stay did not affect the landlord's right to collect postpetition rent which would be due from the debtor rather than from the estate. (*Id.* at 9.) In addition, Judge Garrity concluded that the automatic stay terminated once the discharge had issued. (*Id.* at 10.) He accordingly vacated the Stay Order, and decreed that the Eviction Order governed the parties' rights. (*Id.* at 12, 13–14.)

On September 30, 1999, the landlord filed a motion in New York Civil Court to restore its non-payment proceeding to the court's calendar, and obtain a warrant of eviction, presumably based upon the debtor's failure to pay September rent in accordance with the Eviction Order. On November 24, 1999, the federal district court granted a stay pending the debtor's appeal of the Eviction Order. After the debtor failed to appear at a December 17,

---

eviction could issue even if the debtor tendered timely rent up through and after October 31, 1999. (See 8/31 Tr. at 8–10.)

7. The Stay Order is annexed to the Affirmation of Arthur G. Mariano, dated Dec. 20, 1999, as exhibit 1.

8. Rule 4004(c) of the Federal Rules of Bankruptcy Procedure states, with exceptions that are not material, as follows:

In a chapter 7 case, on expiration of the time fixed for filing a complaint objecting to discharge and the time fixed for filing a motion to dismiss the case pursuant to Rule 1017(e), the court shall forthwith grant the discharge....

Under Fed.R.Bankr.P. 4004(a), objections to discharge must be filed no later than sixty days after the first date set for the § 341(a) meeting. Rule 1017(e)(1), which concerns motions to dismiss for substantial abuse, contains the same sixty day limitation. The "first

date set" for debtor's § 341(a) meeting was June 23, 1999. Accordingly, the sixty days ran on August 23rd, and the discharge should have issued shortly thereafter. For some reason, it has never issued.

9. Section 362(c) states:

(c) Except as provided in subsections (d), (e), and (f) of this section—

(1) the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate; and

(2) the stay of any other act under subsection (a) of this section continues until the earliest of—

(A) the time the case is closed;

(B) the time the case is dismissed; or

(C) if the case is a case under chapter 7 of this title concerning an individual or a case under chapter 9, 11, 12, or 13 of this title, the time a discharge is granted or denied.

1999 conference, District Judge Stein issued an order dismissing her appeal without prejudice to its renewal. In addition, he remanded the case to this court for clarification of the Eviction Order and the September 23 order vacating the Stay Order. Finally, Judge Stein stayed the Eviction Order pending its clarification, and directed the parties to seek clarification or reargument within sixty days.

## DISCUSSION

The landlord has identified several problems or mistakes with the prior orders. Initially, the landlord says it cannot determine whether the automatic stay still precludes reinstatement of eviction proceedings in Civil Court because the Eviction Order could be construed to "reimpose" the stay provided the debtor paid rent for September and October 1999. As noted, however, the Eviction Order imposed a "drop dead" date beyond which the debtor could not remain under any circumstances. *See* footnote 6, *supra.* Moreover, this decision resolves any possible ambiguity regarding the debtor's rights.

The landlord also points to a factual error underlying the order vacating the Stay Order. Judge Garrity mistakenly assumed that the debtor had been granted a discharge, leading him to the erroneous conclusion that the stay had terminated for that reason. The parties apparently shared Judge Garrity's belief because they did not correct his assumption when they had the chance to do so at the September 23, 1999 hearing. In any event, the conclusion that the stay had terminated on that ground cannot stand. In addition, although not raised by the landlord, I disagree that a rejected lease, *ipso facto,* is deemed abandoned to the debtor.

Despite these questionable findings and conclusions, I agree with Judge Garrity's decision to vacate the Stay Order, effectively granting stay relief to the landlord.

The pending motion for reargument provides the chance to clarify any ambiguities and place the prior ruling on a firmer footing.

## A. The Estate's Interest in the Lease

■ As noted, the trustee in a chapter 7 case has sixty days to assume or reject a debtor's unexpired lease. Absent assumption within that time, or an extension for "cause," the lease is deemed rejected. 11 U.S.C. § 362(d)(1); *In re Yasin,* 179 B.R. 43, 47 (Bankr.S.D.N.Y.1995). Accepting the debtor's argument that she is a rent-stabilized lessee, her lease was nevertheless "deemed rejected" in early July 1999. In *B.N. Realty,* Judge Sweet concluded that the rejection resulted in the abandonment of the lease to the debtor. 238 B.R. at 256; *accord Couture v. Burlington Housing Authority (In re Couture),* 225 B.R. 58, 64 (D.Vt.1998). Although this will be the inevitable result, there are a few intermediate steps that must first occur.

■ The effect of rejection is one of the great mysteries of bankruptcy law. As a rule, the rejection of a lease gives rise to a pre-petition breach, 11 U.S.C. § 365(g)(1), but does not terminate the lease. *See Medical Malpractice Ins. Ass'n v. Hirsch (In re Lavigne),* 114 F.3d 379, 386–87 (2d Cir.1997) (discussing the effect of rejection on executory contracts). This broad rule is nonetheless subject to a significant exception. Where the trustee rejects a non-residential real property lease, he must immediately surrender the property to the lessor. 11 U.S.C. § 365(d)(1). In such a case, rejection is tantamount to termination.

■ Where, as here, the lease is residential in nature, the general rule applies.[10] Thus, rejection, without more, does not terminate the lease or immediately divest the estate of its interest in the lease. In this regard, property of the

10. Moreover, the rejection of a rent stabilized lease does not necessarily deprive the debtor-tenant of her right under the rent stabilization laws to a renewal lease. *See In re Yasin,* 179 B.R. at 49–50.

estate ceases to be property of the estate when it is abandoned, and abandonment can occur in one of three ways. First, the trustee can abandon the lease during the pendency of the case by serving a notice of abandonment, and if necessary, obtaining an order of abandonment. Fed. R.Bankr.P. 6007(a);[11] see 11 U.S.C. § 554(a).[12] This is a common practice where the value of the lease is inconsequential, and poses a risk of future liability to the estate.[13] Second, a party in interest can seek to compel the trustee to abandon the lease. See 11 U.S.C. § 554(b); Fed. R.Bankr.P. 6007(b).

Third, the trustee can abandon a lease through inaction, analogous to the "deemed rejection" provisions of the Bankruptcy Code. This form of abandonment depends on whether the debtor has identified the lease in her schedules. If the lease is scheduled, and the trustee does not administer it, the lease is deemed abandoned to the debtor when the case is closed. 11 U.S.C. § 554(c). If it is not scheduled, it is not abandoned. Id., § 554(d). In either case, the court can order a different result. See id. § 554(c) and (d).

■ Here, the lease has not been directly or formally abandoned through the notice or motion procedures described above. Further, since the case is still open, the lease has not been deemed abandoned. It is true that the debtor's schedule "G" identifies the lease, and the trustee has filed a "no asset" report on July 9, 1999, signaling that he will not administer the lease for the benefit of the creditors. As a result, the lease will be deemed abandoned to the debtor when the case is closed unless the court orders otherwise. However, this has not yet occurred, and accordingly, the lease remains property of the estate. The landlord must, therefore, obtain relief from the stay to terminate the lease and obtain control of the premises.[14]

11. Rule 6007 states:

(a) **Notice of Proposed Abandonment or Disposition; Objections; Hearing.** Unless otherwise directed by the court, the trustee or debtor in possession shall give notice of a proposed abandonment or disposition of property to the United States trustee, all creditors, indenture trustees and committees elected pursuant to § 705 or appointed pursuant to § 1102 of the Code. A party in interest may file and serve an objection within 15 days of the mailing of the notice, or within the time fixed by the court. If a timely objection is made, the court shall set a hearing on notice to the United States trustee and to other entities as the court may direct.

(b) **Motion by Party in Interest.** A party in interest may file and serve a motion requiring the trustee or debtor in possession to abandon property of the estate.

12. Section 554 states:

(a) After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

(b) On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the

estate or that is of inconsequential value and benefit to the estate.

(c) Unless the court orders otherwise, any property scheduled under section 521(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.

(d) Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate.

13. For example, the sidewalk in front of the premises may be broken, creating the threat of a pedestrian injury. Or someone may be using the premises to carry on a dangerous and illegal activity.

14. In this regard, the automatic stay protects the lease until it is no longer property of the estate, and without regard to whether the discharge has issued. See 11 U.S.C. § 362(c). Further, the pre-petition termination of the lease does not alter the conclusion that a landlord seeking to evict a debtor must obtain relief from the stay. The debtor and estate inevitably have personal property on the premises, and the termination of the lease does not affect those interests. Any act by the landlord that interferes with or exercises control over the estate's property violates the

## B. Relief From the Automatic Stay

■ Section 362(d)(1) of the Bankruptcy Code permits a court to modify the stay for "cause," a phrase the Code does not define. Although the party opposing stay relief has the ultimate burden of disproving the existence of "cause," *see* 11 U.S.C. § 362(g)(2), the movant has the initial burden to show that "cause" exists. *E.g., Mazzeo v. Lenhart (In re Mazzeo),* 167 F.3d 139, 142 (2d Cir.1999); *Sonnax Industries, Inc. v. Tri Component Products Corp. (In re Sonnax Industries, Inc.),* 907 F.2d 1280, 1285 (2d Cir.1990). The burden does not shift if the movant fails to make this showing, in which case the court should refuse to grant stay relief. *In re Mazzeo,* 167 F.3d at 142; *Capital Comm. Federal Credit Union v. Boodrow (In re Boodrow),* 126 F.3d 43, 48 (2d Cir.1997), *cert. denied,* 522 U.S. 1117, 118 S.Ct. 1055, 140 L.Ed.2d 118 (1998).

■ Where a party seeks stay relief to commence or continue litigation in another forum, the bankruptcy court must weigh the request against the following factors in determining if "cause" exists: (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

*In re Sonnax Industries, Inc.,* 907 F.2d at 1286; *accord In re Mazzeo,* 167 F.3d at 142–43. The decision to lift the stay is committed to the court's discretion. *In re Sonnax Industries, Inc.,* 907 F.2d at 1286. Not all of the factors are relevant in every case, *In re Mazzeo,* 167 F.3d at 143; *see In re Touloumis,* 170 B.R. 825, 828 (Bankr.S.D.N.Y.1994), and the court need not assign equal weight to each factor. *In re Keene Corp.,* 171 B.R. 180, 183 (Bankr. S.D.N.Y.1994); *In re Touloumis,* 170 B.R. at 828.

■ The present motion presents a paradigm for stay relief; the lease has already been rejected, and the trustee has determined that there are no assets to administer for the benefit of the creditors. As a result, the landlord's desire to commence or continue eviction proceedings will not have any impact on the bankruptcy case. *In re Touloumis,* 170 B.R. at 828. Further, the eviction proceeding will not interfere with the administration and ultimate closing of the bankruptcy case, or prejudice the debtor's creditors; in truth, it is a private dispute between the debtor and landlord, and the outcome does not affect the bankruptcy case. Moreover, the debtor may still have rights as a rent-stabilized tenant, but the New York Civil Court has greater familiarity with the rent stabilization laws. In short, the state court is the appropriate forum to resolve any dispute between the debtor and the landlord.

Accordingly, reargument is granted, and upon reargument, the stay is vacated to permit the landlord to continue its eviction proceeding against the debtor in state

automatic stay. *See* 11 U.S.C. § 362(a)(3). In addition, any attempt to collect a prepetition claim from property of the estate *or*

*property of the debtor* violates the stay. *See id.,* § 362(a)(2), (6).

court, and if appropriate, obtain the issuance of a warrant of eviction from that court. The Eviction Order should be vacated, and the parties should settle an order on notice consistent with this decision.