**In re Rye Kyeom PARK, Mi Kyung Park, Debtors.**

**Federal Realty Investment Trust, Plaintiff,**

**v.**

**Rye K. Park, et al., Defendants.**

**No. 01–14294–SSM.**

United States Bankruptcy Court, E.D. Virginia, Alexandria Division.

Feb. 27, 2002.

**254**

Timothy P. Schwartz, Bethesda, MD, for Movant.

Steven B. Ramsdell, Tyler, Bartl, Burke & Gorman, PLC, Alexandria, VA, for Debtor.

Gordon P. Peyton, Redmon, Peyton & Braswell, PC, Alexandria, VA, Chapter 7 Trustee.

## MEMORANDUM OPINION

STEPHEN S. MITCHELL,
Bankruptcy Judge.

A preliminary hearing was held in open court on February 20, 2002, on the motion filed by Federal Realty Investment Trust ("Federal") for relief from the automatic stay in order to obtain possession of leased commercial real estate. The chapter 7 trustee did not respond to the motion and did not appear at the hearing. The debtors, however, oppose the relief. The sole disputed issue is whether the *rejection* of the lease that occurred when the trustee failed to assume or reject it within the statutory period *terminated* the debtors' rights under the lease. For the reasons stated, the court concludes that it did not.

*Background*

On November 7, 2001, the debtors filed a voluntary chapter 7 petition in this court. Gordon P. Peyton was appointed and has qualified as trustee. Listed on the debtors' schedules was an unexpired five-year commercial lease with Federal, dated November 1, 1999, for property located at 7031 Little River Turnpike, # 7–B, Annandale, VA 22003.[1] Under the terms of the lease, the debtors were responsible for "minimum rent" in the amount of $3,531.75 per month during the first two years of the lease, and $4,155.00 per month during the final three years of the lease. Additionally, the debtors were responsible for both (a) "percentage rent" based on the gross sales of their business in excess of certain defined "annual breakpoints," and (b) "tax rent" based on estimates made by Federal from time to time.

The debtors have continued to pay rent to Federal since the filing of the petition. The chapter 7 trustee, however, took no action to assume or reject the lease. The present motion was filed by Federal on January 24, 2002. Essentially, Federal argues that under the Bankruptcy Code, the trustee had sixty days from the date of the petition to assume or reject the lease in question; that the trustee failed to do so; that the lease is deemed to be rejected; and that as a result, the property must be

---

1. The debtors operate a business on the property known as "Ellim International, Inc., d/b/a Lil' Thingamujigs."

surrendered to Federal.[2] In response, the debtors do not dispute that the lease has been rejected. Rather, they contend that such rejection only served to abandon the *trustee's* rights and burdens with respect to the lease, leaving the *debtors'* rights and burdens intact. Accordingly, the debtors submit that because they have committed to making ongoing rent payments under the terms of the lease,[3] Federal is adequately protected and a grant of relief from the automatic stay is inappropriate at this time.

### Discussion

Although procedurally the present matter is before the court on a motion for relief from the automatic stay, the real controversy between the parties has nothing to do with the automatic stay. The automatic stay, as such, expired when the debtors received their discharge the day following the hearing.[4] What the parties are seeking, rather, is a ruling as to whether *rejection* resulted in the *termination* of the lease or merely constituted a surrender or abandonment of the *trustee's* interest in the lease.

### A.

To answer this question, it is necessary to discuss briefly the nature of the trustee's power in bankruptcy to assume or reject the debtor's unexpired leases and executory contracts. When a debtor files for bankruptcy, an "estate" is created that includes all property interests of the debtor, legal or equitable. § 541(a), Bankruptcy Code. This includes the debtor's contract rights. An unexpired lease or executory contract, however, is a special type of asset, because it is coupled with a liability. To enjoy its benefits, the trustee (or debtor in possession in a chapter 11 case) must perform its obligations. Sometimes, the value of the benefit will exceed the burden of the obligation, with the result that the trustee will typically wish to perform (or assign performance of) the obligation in order to reap the benefit or realize its value. The Bankruptcy Code thus allows a trustee or debtor in possession to "assume"—that is, elect to perform—a lease or executory contract, even one that is in default, so long as any defaults are promptly cured and the other party is provided adequate assurance of future performance. §§ 365(a) and (b), Bankruptcy Code. Often, however, the obligations due under the lease or contract will exceed its value to the bankruptcy estate. In that situation, the trustee may "reject"—that is, elect not to perform—the contract or lease. Rejection, however, is not a species of avoidance: that is, it

2. In its motion, Federal also alleged postpetition arrearages by the debtors. At the hearing, however, counsel for Federal conceded that rent payments were current. Accordingly, the sole issue before the court concerns the legal effect of the trustee's rejection.

3. No evidence was presented demonstrating the debtors' ability (or inability for that matter) to make future payments under the lease. The landlord's motion, however, is not premised on a lack of adequate protection. Accordingly, the court need not reach that issue.

4. The automatic stay comes into effect upon the filing of a bankruptcy petition. § 362(a), Bankruptcy Code. The stay is very broad and protects the debtor, property of the debtor, and property of the bankruptcy estate. Unless sooner terminated on motion of the party stayed, the stay of actions against property of the bankruptcy estate expires when the property is no longer property of the estate. § 362(c)(1), Bankruptcy Code. This generally occurs in one of two ways: either the property is abandoned under § 554, Bankruptcy Code, or it is exempted under § 522, Bankruptcy Code. The stay of actions against the debtor and property of the debtor expires when the debtor is granted or denied a discharge. § 362(c)(2), Bankruptcy Code.

does not eliminate the estate's liability.[5] Rather, rejection simply constitutes a *breach* of the lease or contract. § 365(g), Bankruptcy Code. Even though the act of rejection takes place after the date of the bankruptcy filing, the breach (with certain exceptions) is treated as occurring on the date of the bankruptcy filing. *Id.* As a result, any claim for damages flowing from the breach is treated as a prepetition claim.

Normally, acceptance or rejection requires an affirmative act by the trustee (or debtor in possession) and is subject to court approval. § 365(a), Bankruptcy Code. However, special rules apply to leases of nonresidential real property under which the debtor is the tenant. Such leases are "deemed rejected," and the trustee is required to "immediately surrender such . . . property to the lessor" unless the lease has been assumed or rejected within 60 days after the filing of the bankruptcy petition (or within such additional time as the court, within such 60 day period, fixes). § 365(d)(4), Bankruptcy Code.[6]

### B.

■ In the present case, the trustee did not act to assume or reject the lease within the 60–day period and is therefore deemed to have rejected it. That the *trustee* has no further interest in the lease is plain. The question is, what interest do the *debtors* have?

■ As one court has cogently observed, "The effect of rejection is one of the great mysteries of bankruptcy law." *In re Henderson,* 245 B.R. 449, 453 (Bankr.S.D.N.Y.2000). The general rule is that rejection constitutes a *breach* of a lease or executory contract, but does not *terminate* the contract. 3 Lawrence P. King, Collier on Bankruptcy ¶ 365.09 at 365–74 (15th ed. rev.2000) ("[T]he effect of rejection . . . is limited to a breach or abandonment by the debtor or trustee rather than a complete termination of the lease.") Of course, in the vast majority of cases, the trustee's technical or anticipatory breach of an unexpired lease (by failing to assume it within the statutory period) will be accompanied by an actual breach in the form of nonpayment of rent. The failure to pay the required rent plainly constitutes a material breach and would unquestionably give the landlord the right to treat the lease as terminated.

But here we have the unusual situation in which the rent *is* being paid notwithstanding the rejection. Thus, we have a technical breach arising from the failure to assume; but whether we have a "material" breach allowing the landlord to treat the lease as terminated is more problematic.[7] The fundamental obligation of a tenant under a real property lease is to pay the reserved rent. It is at least debatable whether the trustee's refusal to perform

**5.** However, other provisions of the Bankruptcy Code may operate to reduce the estate's liability. *See, e.g.,* § 502(b)(6), Bankruptcy Code (limiting the amount of a landlord's claim for future rent due under lease).

**6.** This provision was added to Section 365 by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353 (1984).

**7.** In Virginia, the rule that only a "material" breach of a contract will excuse performance by the other party is well-established. *Horton*

*v. Horton,* 254 Va. 111, 115–16, 487 S.E.2d 200, 203–04 (1997) ("A material breach is a failure to do something that is so fundamental to the contract that the failure to perform that obligation defeats an essential purpose of the contract."); *Neely v. White,* 177 Va. 358, 366–67, 14 S.E.2d 337, 340–341 (1941) ("Before partial failure of performance of one party will excuse the other from performing his contract or give him a right of rescission, the act failed to be performed must go to the root of the contract.").

that obligation goes "to the root of the contract" or "defeats an essential purpose of the contract" given that the landlord never contracted with the trustee in the first instance, and the parties with whom the landlord contracted are continuing to perform. Of course, it could be argued that the failure affirmatively to assume the lease *has* materially affected the landlord's rights, since the debtors' contractual obligation to pay rent has been discharged. Thus, the tenants are no longer on the hook to the landlord until the expiration of the lease term but are free to stop paying rent and to turn the keys back to the landlord at any time. However, in *Riggs Nat'l Bank v. Perry*, 729 F.2d 982 (4th Cir.1984), the Fourth Circuit, in addressing the analogous situation of a secured creditor, held that the creditor was not entitled to relief from stay to repossess its collateral where the debtor continued to make required payments under the installment purchase contract, even though the debtor's personal liability for a deficiency in the event of a future default was being discharged in the bankruptcy.

### C.

The foregoing analysis is complicated by the statutory requirement for surrender when the trustee does not assume or reject an unexpired lease of *non-residential* real property within the statutory period. § 365(d)(4). Absent the requirement for surrender, it seems clear that a chapter 7 trustee's rejection of a lease would *not* affect the debtors' right to remain in possession. As explained by a leading commentator,

> The effect of rejection on third parties is also an issue in chapter 7 cases, particularly in the case of leases, since leases are rarely assumed by chapter 7 trustees and are therefore automatically rejected pursuant to section 365(d)(1). *Because rejection does not effect a ter-*
> *mination of the lease, most courts that have considered the issue have held the rejection to have the effect of abandoning the lease back to the debtor.*

3 Collier on Bankruptcy ¶ 365.09 at 365–76 (emphasis added).

With respect to *non-residential* real estate, however, a majority of courts have concluded that the express requirement for surrender upon failure to assume within the statutory period necessarily implies a termination of the leasehold estate. *See Sea Harvest Corp. v. Riviera Land Co.*, 868 F.2d 1077 (9th Cir.1989); *In re Henderson*, 245 B.R. 449 (Bankr.S.D.N.Y. 2000); *In re Locke*, 180 B.R. 245 (Bankr. C.D.Cal.1995); *In re 6177 Realty Assoc., Inc.*, 142 B.R. 1017 (Bankr.S.D.Fla.1992); *Chatlos Sys. Inc. v. Kaplan*, 147 B.R. 96 (D.Del.1992), *aff'd*, 998 F.2d 1005 (3rd Cir. 1993); *In re Giles Assoc., Ltd.*, 92 B.R. 695 (Bankr.W.D.Tex.1988); *In re Gillis*, 92 B.R. 461 (Bankr.D.Hawai'i 1988); *In re Bernard*, 69 B.R. 13 (Bankr.D.Hawai'i 1986); *In re Southwest Aircraft Services, Inc.*, 53 B.R. 805 (Bankr.C.D.Cal.1985), *rev'd on other grounds*, 831 F.2d 848 (9th Cir.1987), *cert. denied*, 487 U.S. 1206, 108 S.Ct. 2848, 101 L.Ed.2d 885 (1988); *In re Hawaii Dimensions, Inc.*, 39 B.R. 606 (Bankr.D.Hawai'i 1984), *aff'd*, 47 B.R. 425 (D.Haw.1985). Other courts have disagreed. *See Matter of Austin Development Co.*, 19 F.3d 1077 (5th Cir.1994), *cert. denied*, 513 U.S. 874, 115 S.Ct. 201, 130 L.Ed.2d 132 (1994); *In re Blackburn*, 88 B.R. 273 (Bankr.S.D.Cal.1988); *In re Picnic 'N Chicken, Inc.*, 58 B.R. 523 (Bankr. S.D.Cal.1986); *In re Storage Technology Corp.*, 53 B.R. 471 (Bankr.D.Colo.1985). There are no published decisions within this District or by the Fourth Circuit discussing this issue. However, the Fourth Circuit, in an unpublished opinion, has stated that "in the ... context of a nonresidential lease in which the tenant must

immediately surrender possession upon rejection, the rejection of the lease is also a termination of the lease." *Cromwell Field Assoc., L.L.P. v. May Department Stores Co.*, 5 Fed.Appx. 186, 188, 2001 WL 208501 at *1–2 (4th Cir.2001). *Cromwell Field*, however, involved a chapter 11 case in which the debtor (Caldor, Inc.) was a debtor in possession and had actually vacated the premises upon rejecting the lease (although, oddly enough, it continued to pay rent for another four months). The dispute in *Cromwell Field* was not between the landlord and the debtor, but rather between the landlord and the debtor's corporate parent as guarantor. Given that the tenant had moved out and that *no* rent was being paid, the discussion concerning termination of the leasehold upon rejection is rather clearly *dicta*.

### D.

Having carefully considered the issue, the court is of opinion that the minority line of cases, as exemplified by *Austin Development Co.*, is nevertheless the better reasoned and is more persuasive. Congress clearly knew and understood the

difference between *breach* and *termination* of a lease or executory contract, as evidenced by the specific reference to termination in other provisions within Section 365.[8] While § 365(d)(4), Bankruptcy Code expressly requires the *trustee* to surrender the property to the landlord, it is silent as to an individual debtor who is not a debtor in possession. Although chapter 7 is commonly referred to as a "liquidation" proceeding, this is something of a misnomer when the debtor is an individual. The debtor does not cease to exist. The debtor continues in existence following bankruptcy, and any property not administered by the trustee for the benefit of creditors simply reverts to the debtor, subject to any liens or interests that were not avoided in the course of the bankruptcy. Given that reality, rejection by a trustee must be understood as affecting only the rights and liabilities of the bankruptcy estate, not the debtor, at least where the debtor is an individual and was not a debtor in possession at the time the lease was rejected. The *Cromwell Field* opinion, as noted, is unpublished. It is therefore not binding on lower courts within this circuit. *See* U.S.Ct. of App. 4th Cir. Rule 36(c).[9] Of

8. *See, e.g.,* § 365(h)(1), which deals with the situation in which the debtor is the landlord rather than the tenant. In such instance, *"if the rejection by the trustee amounts to such a breach* as would entitle the lessee to treat such lease as *terminated,"* the tenant may elect between "treat[ing] such lease as *terminated* by the rejection" or remaining in possession and paying the rent.

9. Fourth Circuit U.S. Court of Appeals Rule 36(c) provides in relevant part as follows:
   In the absence of unusual circumstances, this Court will not cite an unpublished disposition in any of its published opinions or unpublished dispositions. Citation of this Court's unpublished dispositions in briefs and oral arguments in this Court and in the district courts within this Circuit is disfavored, except for the purpose of establishing res judicata, estoppel, or the law of the case. If counsel believes, nevertheless, that

an unpublished disposition of any court has precedential value in relation to a material issue in a case and that there is no published opinion that would serve as well, such disposition may be cited if counsel serves a copy thereof on all other parties in the case and on the Court.

The fact that West Group is now digesting and publishing, in its "Federal Appendix" series, opinions not selected by the Court of Appeals for formal publication, certainly puts a new twist on just what constitutes an "unpublished" opinion. In any event, the problem with relying on unpublished dispositions is well illustrated by a recent pair of rulings addressing the issue of lien "strip-off" in chapter 7 cases. In an unpublished decision, *In re Smith*, 1 Fed.Appx. 178, 2001 WL 22918 (4th Cir.2001), a panel of the Court squarely held that a chapter 7 debtor could "strip off" a wholly unsecured lien. Yet only six months later, a different panel of the Court, this time

course, opinions that are not strictly speaking binding may nevertheless be instructive or persuasive. As discussed above, however, *Cromwell Field* addresses a very different factual situation from that presented by this case, and the Court's comment in that case as to the effect of rejection would be dicta even if the decision had been published.

### E.

█ As noted, the automatic stay has already terminated as a matter of law. Accordingly, the present motion, to the extent it seeks relief from the automatic stay, is moot. The landlord is therefore free, in the event of breach, to seek possession of the premises under state law. However, the rejection of the lease by the trustee did not, standing alone, terminate the debtors' leasehold interest.

A separate order will be entered consistent with this opinion.

in a published opinion, held directly to the contrary. *Ryan v. Homecomings Fin. Network,* 253 F.3d 778 (4th Cir.2001).