OPINION OF THE COURT
Michael D. Stallman, J.
These special proceedings commenced by petitioner Salvation Army pursuant to Social Services Law § 461-h, seek final judgments and orders terminating the respondents’ admission *417 agreements and involuntarily discharging respondents from the subject premises.
Respondents move to dismiss the petitions on the theory that petitioner has reinstated respondents’ admission agreements by amending them and by thereafter accepting respondents’ payment of monthly occupancy charges at higher rates. Petitioner cross-moves for the relief sought in the petition arguing (1) the admission agreements were not amended, but merely adjusted and (2) any analogies to reinstatement of a landlord-tenant relationship are inapposite.
Respondents first moved to dismiss the petitions on April 8, 1992 on the same grounds raised here; that motion was denied on procedural grounds. On May 28, 1992, respondents again moved to dismiss; the motion was submitted to this court on June 3, 1992. By letter dated June 16, 1992, this court gave notice to all parties that it would treat respondents’ motion to dismiss as a motion for summary judgment. All counsel were given an opportunity to submit additional papers.
BACKGROUND
Petitioner, a religious denomination, has owned and operated the subject premises, the Anthony Residence at 119 East 29th Street in Manhattan, for over 35 years. Approximately 15 years ago, petitioner obtained a certificate from the New York State Department of Social Services to operate the Residence as an "adult care facility.”[1] These facilities must meet an elaborate set of State standards.
Respondents reside at the Anthony Residence pursuant to admission agreements. An admission agreement must provide the terms and conditions for payment of the basic charges for required services, material, equipment and food. (18 NYCRR 487.5 [d] [6].) Subdivision (d) provides that the admission *418 agreements be updated periodically as changed conditions necessitate.
In 1986, petitioner decided to surrender the Anthony Residence’s operating certificate in order to permit it to cease operating such a facility. Pursuant to Social Services Law § 461-g (1) (e) petitioner notified the Department of Social Services (DSS) of its intention to cease operating the Anthony Residence as a licensed adult care facility and entered into a decertification plan with the DSS to transform the adult care facility into a residence for low-income working women. Under this plan, representatives of petitioner and DSS assisted the residents’ relocation to other licensed adult care facilities.
On October 7, 1988, DSS approved an amended decertification plan which established new timetables for completion of the decertification process and which provided that petitioner would issue 30-day notices pursuant to Social Services Law § 461-g (2) (a) to residents who remained at the premises as of December 31, 1988. The plan provided that the petitioner would proceed to court to remove any resident remaining at the premises after the expiration of the 30-day notice period pursuant to Social Services Law § 461-h.
On January 23, 1989, petitioner gave each respondent 30 days’ written notice of its intention to terminate respondents’ admission agreements as required by 18 NYCRR 487.5 (f) (3). This 30-day notice also advised respondents that petitioner would commence special proceedings against those residents who objected to this notice or who refused to relocate voluntarily after February 28, 1989. All residents except respondents have moved from the premises.
Following receipt of these notices, respondents commenced an article 78 proceeding in Supreme Court, challenging the decertification, and seeking to restrain petitioner from taking any action to evict the residents. A temporary restraining order was signed but subsequently vacated on March 24, 1989 and the proceeding was dismissed; this dismissal was unanimously affirmed by the Appellate Division, First Department. Petitioner then commenced this special proceeding in Civil Court on or about April 14, 1989.
Respondents made several dismissal motions which were consolidated before Hon. Margaret Taylor, who dismissed the petitions on May 31, 1990 because of alleged pleading deficiencies. By order dated May 31, 1991, one year later, the Appellate Term, First Department, unanimously reversed the lower court and reinstated the petitions.
*419 On July 5, 1991, petitioner served a notice which set forth revised monthly residence fees. Respondents contend that this notice "renewed” the admission agreements.
Respondents assert that these proceedings should be dismissed, contending that petitioner’s acts of revising the admission agreements and accepting the increased monthly occupancy rate "unquestionably indicates” that petitioner either (1) abandoned the proceedings or (2) revitalized the terminated agreements.[2]
Respondents are, in effect, asking this court to apply principles applicable only in the landlord-tenant context. For example, in a month-to-month tenancy, a landlord is deemed to have renewed the landlord-tenant relationship by accepting rent from the tenant for a period after the expiration of the 30-day notice required by Real Property Law § 232-a. Similarly, a landlord’s acceptance of rent after service of the predicate notices but prior to the commencement of a summary proceeding implies permission for the tenant to stay on and reinstates the tenancy. (Atkin’s Waste Materials v May, 34 NY2d 422 [1974].) However, there is not now, nor has there ever been a landlord-tenant relationship of any kind between the parties and analogies to this relationship are inapposite. Petitioner was at one time under contract with the City to provide specialized services on behalf of the City to a particular population in need of such services. The law mandates that those services be provided only by a licensed adult care facility. The law permits such a licensed facility to "decertify” under certain circumstances. It is uncontroverted that petitioner has been decertified since 1988. Following decertification the petitioner was no longer a proper entity to provide such services and accordingly brought this proceeding in order to permit itself to lawfully end a relationship with a client population which it no longer was qualified or obligated to service. In the interim, while respondents remained in residence, petitioner continued to provide the same services and received statutorily authorized reimbursement from DSS. Under the circumstances presented here, the acceptance of such reimbursement from the contracting governmental entity is *420 not equivalent to petitioner’s acceptance of rent from a tenant following the termination of the landlord-tenant relationship.[3]
. As recognized by Appellate Term (Salvation Army v Alverson, May 31, 1991, index No. 90-364), there never was a landlord-tenant relationship between the parties at bar. A fortiori, no landlord-tenant relationship can be revived if one never existed. Moreover, both RPAPL 713-a and Social Services Law § 461-h explicitly provide that nothing in article 7 of the Social Services Law shall be construed to create a relationship of landlord and tenant between an operator of an adult home or residence for adults and a resident of such a specialized facility.
It is of no legal significance that this proceeding was assigned "L & T” index numbers by the clerk’s office when filed, and thereafter calendared on the Part 18 residential landlord-tenant calendar. Although the subject accommodations are assuredly residential, this special proceeding is not a summary proceeding brought under the Real Property Actions and Proceedings Law. Rather, this special proceeding is authorized by Social Services Law article 7, which independently grants the Civil Court subject matter jurisdiction to entertain it. (Social Services Law § 461-h.) It is therefore not within the subject matter of the Housing Court, and cannot be heard by a Housing Judge. (Cf., UCCA 110.)
As an alternative ground, respondent contends that the applicable regulations set forth in 18 NYCRR 487.5 (f) (17) (i) state that while legal action is in progress, petitioner shall not "seek to amend the admission agreement in effect as of the date of the notice of termination”. However, a careful reading of the subject notice and the applicable regulations reveals that such an increase or other change in the monthly charge to respondents does not constitute an "amendment” of the admission agreement. Rather, such a permissible increase is deemed an "adjustment”, not an "amendment.” (18 NYCRR 487.5 [d] [6] [vii].) Furthermore, the regulations do not provide *421 for a penalty or sanction in the event that a petitioner does in fact attempt to amend the admission agreement. In light of the foregoing, respondents have not made a showing entitling them to a judgment of dismissal as a matter of law.
Respondents are effectively requesting this court to grant declaratory and mandatory injunctive relief for which this court lacks subject matter jurisdiction. This court lacks the power to compel a non-profit charitable organization to continue providing services which it is no longer obligated to provide and which it is no longer legally certified to provide. Indeed, it would be contrary to law for this court to direct that such services be provided by an organization no longer legally authorized to provide them. (See, Social Services Law § 461-h [12] [c].)
It is undisputed that respondents need and are entitled to the type of care that can be provided only by a qualified adult care facility. On purely humanitarian grounds, respondents’ interests as well as petitioner’s, would be ill-served by ignoring that this facility does not, and cannot, provide the medical and custodial services that respondents’ own moving papers hint that they need. Conversely, it would be contrary to law for this court to effectively require that respondents be housed in a nonconforming facility.
Respondents have known for approximately six years that they would have to relocate; in fact, most of the original Anthony residents did relocate voluntarily. Moreover, these respondents already challenged the decertification in the unsuccessful article 78 proceeding. It is unfortunate that the intervening time during which these proceedings were pending was not used to find suitable, appropriate accommodations for them.
Petitioner has made vague claims in its papers that respondents have received higher SSI payments as a result of residing in a licensed adult care facility, with the implication that respondents may have improperly received and retained such payments. This question is not relevant here. Petitioner has not claimed entitlement to additional payment, nor has DSS or anyone else with standing challenged petitioner’s, or respondents’, receipt of payments, whether before or after decertification.
In sum, there are no issues of fact requiring a trial. Petitioner has more than adequately demonstrated that it has done that which the law requires to discontinue the facility. *422 Nothing in the applicable statutes or regulations prevents petitioner from obtaining the relief sought in these proceedings; indeed, the evidence conclusively shows that such relief is required as a matter of law.
Accordingly, respondents’ motion to dismiss is denied and petitioner’s cross motion for summary judgment is granted.
Settle order and final judgment on 15 days’ notice, for presentation to the court, providing for termination of the admission agreements and discharge of respondents from the subject facility. The order shall provide a 30-day grace period to enable respondents to relocate.
Counsel for both sides are directed, during the settlement period, to cooperate with each other and with the Department of Social Services, to devise a humane and expeditious plan for relocating respondents to an appropriate facility capable of providing all services to which they are legally entitled. Such plan should be contained in a stipulation[4] signed by all counsel and a representative of DSS. Counsel may contact this court if judicial assistance is needed.

. An adult care facility is an establishment which provides long-term residential care and services to persons unable to reside independently. It is a generic term which embraces adult homes, defined as not-for-profit adult care facilities which provide room, board, housekeeping, personal care and supervision to five or more adults unrelated to the operator. (18 NYCRR 487.2 [d].) Not at issue here are adult residences and private proprietary adult homes, which differ in terms of services provided and profit-making status. (Cf., 18 NYCRR 487.2 [b]; 490.1 et seq.) The certification and subsequent decertification appear to denominate an adult care facility. The facility at issue was apparently operated as an adult home, as recognized by the DSS and the parties in their reliance on the regulations applicable to adult homes.

. There was no terminated admission agreement which could be "revitalized” by acceptance of the increased monthly charges. Only this court can terminate an admission agreement between petitioner and respondent pursuant to Social Services Law § 461-h (1) (a) and § 461-h (10) (a); indeed, it is the ultimate relief sought by petitioner in this proceeding.

. It is uncontroverted that respondents did not pay these charges out of pocket. Rather, these monthly charges were paid entirely by public assistance payments specifically allocated for this purpose. These payments were made by the government to the individual respondents, for payment to petitioner. The respondents would not have received these payments if they did not live at the Anthony Residence or a similar facility. It is thus undisputed that the revised monthly charges did not affect respondents or result in any hardship or cost to them. Neither is there any proof that they detrimentally relied on them.

. Such stipulation may provide that the relocation plan is without prejudice to the parties’ legal rights, including the right to appeal, and that such stipulation does not constitute a waiver of either side’s legal or factual positions.